IRENE MAGILL, TRANSFEREE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Magill v. Comm'r
Docket Nos. 9094-74, 9126-74, 9127-74. United States Tax Court
T.C. Memo 1982-148; 1982 Tax Ct. Memo LEXIS 596; 43 T.C.M. (CCH) 859; T.C.M. (RIA) 82148; March 24, 1982. Richard S. Hartford, for the petitioner in Docket No. 9094-74. Richard M. Kates, for the petitioners in Docket Nos. 9126-74 and 9127-74. Bryan R. Sullivan, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent has determined that the petitioners in these consolidated cases are liable as transferees (or, in the case of petitioner Phyllis Berliant, as a transferee of a transferee) for the unpaid estate tax of the estate of Rae Berliant, as follows: [2]
Estate Tax
Addition to Tax
Petitioner
Docket No.
Deficiency
Under Section 6651(a)(1) [3]
Irene Magill
9094-74
$ 67,550.63
$ 16,887.66
Florence Kraft
9126-74
67,550.63
16,887.66
Phyllis Berliant
9127-74
67,550.63
16,887.66
*601 After concessions we are left with the following issues for decision: (1) Whether petitioners Irene Magill and Florence Kraft are liable as transferees under section 6901(a) for any unpaid estate tax with respect to the value of stock and liquidation proceeds they received as beneficiaries of the estate. (2) Whether petitioner Phyllis Berliant is liable as a transferee of a transferee under section 6901(a) for any unpaid estate tax with respect to the value of stock and liquidation proceeds she received following the death of her husband, who was a beneficiary of the estate. (3) Whether petitioners Florence Kraft and Irene Magill are liable under section 6324(a)(2) for any unpaid estate tax with respect to certain joint tenancy property, totten trust accounts and annuity proceeds which passed to them outside the probate estate by reason of Rae Berliant's death. (4) Whether certain stocks, bonds and savings accounts in which decedent held an interest as a joint tenant are includable in the gross estate under *602 section 2040. (5) Whether certain totten trust accounts, of which decedent was trustee and her children or grandchildren beneficiaries, are includable in the gross estate under sections 2036, 2037, or 2038. (6) Whether the estate is entitled to deduct a fee paid to an attorney who represented certain beneficiaries in litigation concerning the administration of the estate. (7) Whether the late filing of the estate tax return was due to reasonable cause. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of fact and the attached exhibits are incorporated herein by reference. Rae Berliant (decedent) died testate on November 4, 1964, a resident of Chicago, Illinois. Decedent was married to Julius Berliant, a doctor, who died on or about December 31, 1933. Four children were born of this marriage, Sidney Berliant, Ernest Berliant, and petitioners Irene Magill and Florence Kraft (hereinafter individually referred to as Sidney, Ernest, Irene and Florence). Ernest was born in 1907, married in 1944, and fathered two children during the 1940's or 1950's. Irene was born in 1910, married in 1929, and gave birth to three children *603 during the 1930's. Florence was born in 1915, married in 1939, and gave birth to five children from 1940 to 1954. Sidney was born in 1917, married petitioner Phyllis Berliant (Phyllis) in 1940, and had four children with Phyllis in the 1940's and 1950's. Each of decedent's children resided with decedent until he or she married. Petitioners Irene, Florence and Phyllis resided in Wilmette, Chicago and Skokie, Illinois, respectively, when they filed their petitions in these consolidated cases. Decedent's father, Nathan Rosenblat, died in 1931. He left assets valued at $ 42,930.31, most of which were placed in a trust which named his wife and their five children as life income beneficiaries. Under the terms of the trust the income was generally required to be divided equally among the surviving income beneficiaries. Upon the death of the last surviving income beneficiary the corpus of the trust was to be distributed to Nathan Rosenblat's grandchildren. During her lifetime decedent received at least $ 9,356,52 from this trust. Decedent's mother, Clara Rosenblat, died in 1937 and left assets valued at $ 8,975. These assets were placed in an investment company operating under *604 the name of Clara's, Ltd., and each of Clara Rosenblat's children, including decedent, received an interest in the company. During her lifetime decedent received income from Clara's, Ltd., totaling at least $ 2,425.39. Upon the death of her husband, Julius Berliant, decedent received the proceeds of a $ 10,000 life insurance policy and certain other assets of an undetermined amount from his estate. Decedent was never formally employed during her lifetime. She was, nevertheless, an excellent businesswoman and regularly traded in the bond and stock markets. During the 1920's and 1930's she also actively traded in so-called "gold bonds," which were commonly issued by private individuals during that era in order to finance the construction of real estate.Her shrewd investment dealing and extraordinarily frugal nature enabled her to amass a substantial amount of cash and other assets before she died in 1964. All four of decedent's children began working fulltime jobs by ages 16 or 17. Until they married and moved out of decedent's home they regularly turned over a portion of their earnings to decedent, who saved or invested some of the money and used the rest to defray the *605 family's living expenses. The children continued to give money to the decedent from time to time after they married and moved out of the family residence. To the extent the money was not needed for her support decedent invested it in stocks, bonds, or interest-bearing savings accounts and certificates. Florence and her husband also supplied decedent with free food from their grocery store from time to time until her death in 1964. None of the children maintained any records of the amounts which he or she had contributed to the decedent. Nor did decedent maintain any such records. None of the children was aware of the total amounts which had been contributed by the other siblings. The contributions were in the nature of gifts rather than conveyances in trust for the benefit of the respective transferors. Decedent reported the dividend and interest income on all of the money she invested, including the money she received from her children, on her individual income tax returns. None of the children or their spouses ever reported any interest or dividends attributable to the investments on their personal income tax returns, irrespective of whether the underlying investment property *606 was held solely in decedent's name, in decedent's name and the name of any of her children as joint tenants, or in the name of decedent as trustee for her children or grandchildren. The children never questioned decedent about any assets she purchased or about the various bank accounts in which she deposited money. Thus, prior to her death they knew little or nothing about the nature, value or state of ownership of these investments, including those bank accounts established by decedent in which the children were named as trust beneficiaries or joint tenants. At no time prior to decedent's death did the children exercise any control over the investments or make any withdrawals from any of the savings accounts. Whenever a signature of one of the children was required on a bank document, such as a signature card on a joint account, decedent would bring the document to the child for signature and then return it to the bank herself. Beginning in the mid-1950's all of the savings accounts maintained by decedent (including jointly held accounts and totten trust accounts) were located at either Chicago Federal Savings & Loan (CFSL) or Bell Federal Savings & Loan (BFSL). She visited *607 these banks at least once a month to make deposits, open new accounts or transfer funds between acounts. Although she occasionally made cash deposits, the bulk of the deposits were dividend checks she received from her stock investments. At her death, decedent was a joint tenant with respect to the following joint tenancy property, none of which was reported on her estate tax return: Surviving
Date of Death
Item
Joint Tenant
Balance or Value
CFSL Savings Accounts: # 70260-5
Florence
$ 27,894.87
# 30818
Ernest
9,000.00
# 30847
Irene
7,000.00
# 30887
Florence
7,000.00
# 30848
Sidney
7,000.00
U.S. Gov't. Bonds
ernest
175,000
Montgomery Ward Stock--
24 Shares
Florence
1,026.00
Cities Service Stock--
7 Shares
Florence
528.50
$ 59,624.37
At her death, decedent was the sole authorized signatory and trustee of the following totten trust accounts, none of which was reported on her estate tax return: Surviving
Date of Death
Item
Beneficiary(ies)
Balance
BFSL Savings Accounts: # 338388
(Grandchild)
$ 885.18
# 338389
(Grandchild)
885.18
# 338390
(Grandchild)
885.18
# 338385
(Grandchild)
885.18
# 338386
(Grandchild)
497.91
# 338387
(Grandchild)
663.88
# 16379
(Grandchild)
663.89
# 24521
(Grandchild)
553.24
# 3682
(Grandchild)
400.00
# 3683
(Grandchild)
700.00
# 150173
(Grandchild)
387.27
# 213495
Florence
12,638.26
# 19228
Sidney
1,097.94
# 107141
Sidney
11,595.28
# 107139
Florence
16,006.72
CFSL Savings Accounts: # 95207-7
Irene, Florence,
Sidney and Ernest
11,256.22
# 107181
Ernest
1,129.89
# 65648-8
Sidney
24,757.83
# 129730-8
Irene
20,404.27
$ 106,293.32
*608 Decedent supplied all the consideration for the foregoing joint tenancy property and totten trust accounts. By virtue of their rights as surviving tenants or beneficiaries Sidney and petitioners Irene and Florence took possession and control of the following assets upon the death of decedent: Surviving Joint Tenant
Date of Death
or Beneficiary
Item
Balance of Value
Irene
CFSL Sav. Acc. # 30847
$ 7,000.00
Irene
CFSL Sav. Acc. # 95207-7
2,814.05
Irene
CFSL Sav. Acc. # 129730-8
20,404.27
$ 30,218.32
Florence
CFSL Sav. Acc. # 70260-5
$ 27,894.87
Florence
CFSL Sav. Acc. # 30887
7,000.00
Florence
CFSL Sav. Acc. # 95207-7
2,814.06
Florence
BFSL Sav. Acc. # 213495
12,638.26
Florence
BFSL Sav. Acc. # 107139
16,006.72
Florence
Montgomery Ward Stock-24 Shares
1,026.00
Florence
Cities Service Stock-7 Shares
528.50
$ 67,908.41
Sidney
CFSL Sav. Acc. # 30848
$ 7,000.00
Sidney
CFSL Sav. Acc. # 95207-7
2,814.05
Sidney
CFSL Sav. Acc. # 65648-8
24,757.83
Sidney
BFSL Sav. Acc. # 19228
1,097.94
Sidney
BFSL Sav. Acc. # 107141
11,595.28
$ 47,265.10
Decedent was survived by all four of her children. However, *609 only Irene, Florence and Sidney were named as beneficiaries in her will. Irene was also named executrix of the estate and served in that capacity from January 18, 1965 until the estate was closed on June 30, 1972. Prior to her appointment as executrix Irene had never before acted as a personal representative for an estate. She had only a high-school education. Sometime in November of 1964 she enlisted the services of Caplow & Zimmerman, a law firm, to assist her in the administration of the estate. The probate of the estate generated a considerable amount of litigation among the estate and decedent's children. In 1965 Ernest, who had been disinherited by decedent, commenced litigation to contest the will and to establish ownership of certain stock titled in his name which Irene had attempted to include in the probate inventory. In connection with this litigation Irene, Florence and Sidney filed an answer with the probate court on May 12, 1969, in which they alleged that decedent held legal title to approximately $ 200,000 of property at her death, of which approximately $ 60,000 "arose out of direct contributions by [them] to the decedent in trust and safekeeping and represented *610 [their] savings." In another paragraph of their answer they admitted that "decedent made substantial gifts to [them] during her lifetime" in the course of establishing the savings accounts of which they became the sole owners upon her death. On December 10, 1969, the probate court, pursuant to an agreement of the parties, dismissed Ernest's petition to set aside the will. It also determined that Ernest had paid full consideration for the disputed shares of stock pursuant to a purchase agreement entered into with the decedent in 1964, and decreed that he was the sole owner of the property. Florence and Sidney also filed a petition with the probate court in March 1970 calling for the removal of Irene as executrix and the appointment of Sidney as a successor executor. The petition complained of Irene's failure to (1) file a Final Account by August 31, 1965, as required in a previous order of the court, and (2) timely file Federal estate and Illinois inheritance tax returns. In particular, the petition alleged in part as follows: 3. That on July 16, 1965, an Order was entered in the above entitled cause, directing the Executor to file a Final Account by August 31, 1965. *611 That the said IRENE MAGILL, Executor, has failed and refused and still fails and refuses to file a Final Account, in accordance with Section 289 of the Probate Act. 4. That the said Executor has failed and refused, and still fails and refuses, to file an Estate Tax Return and an Inheritance Tax Return within the time prescribed by law; the Estate may be surcharged for penalties and interest for failure to file said returns; that in the event there is a surcharge, then said surcharge should be charged to the Executor and deducted from her share of said Estate; that said Estate should not be penalized for the failure and refusal of the Executor to file said returns. 5. That by reason of the failure of the Executor to file an accounting and to file the returns, hereinabove set forth, she should be removed as Executor, in accordance with Section 276 of the Probate Act. On April 19, 1971, the probate court entered an order which directed Irene to file a Final Account and the necessary tax returns within 90 days. The order also contained several directives pertaining to the payment of the estate's Federal estate and Illinois inheritance tax obligations, including penalties and *612 interest, if any. Specifically, the order called for Irene, Florence and Sidney to establish a $ 25,000 escrow account to be used solely for the payment of those obligations. Any penalties and interest were to be surcharged against Irene to the extent of the amount of her executrix fees, but only in the event that total taxes and penalties exceeded the $ 25,000 escrow balance. In the event the escrow account plus any surcharge proved to be insufficient to pay all taxes, penalties, interest and costs of administration, each of the beneficiaries was ordered to pay one-third of the difference, which liability was to be secured by the beneficiary's share of stock held by the estate. Finally, the order provided that upon compliance with the directives contained therein all motions, citations and other matters pending against the executrix would be dismissed. Florence and Sidney were represented in this litigation by an attorney named Aaron Jacobs. For his services he charged a fee of $ 3,500. On December 21, 1971, an order was issued by the probate court which approved the amount of the fee and ordered it paid out of estate assets. The order stated that the services rendered by *613 the attorney were "for and on behalf" and "in the best interests" of the estate. Although the Federal estate tax return was due 15 months after decedent's death, on February 4, 1966, it was not filed until December 16, 1971. No extensions of the filing deadline were ever obtained from the Internal Revenue Service. Initially Irene entrusted Maurice Zimmerman (of Caplow & Zimmerman) with the responsibility for handling all estate legal matters, including the filing of tax returns. In September 1967 Irene retained Gregory Gelderman and his associate, William McMillan, to represent the estate in connection with the probate litigation commenced by Ernest. They were not asked to prepare any estate tax returns, however, and their representation of the estate was concluded on March 11, 1969. At some point Irene also hired attorney John Vosnos to assist her in discharging her duties as executrix and handling the litigation with Ernest. He died on July 8, 1971. The Federal estate tax return was eventually prepared and filed by Maurice Saban, an accountant whom Mr. Vosnos had hired for this purpose. Irene was aware that a Federal estate tax return was required to be filed, but she *614 did not ascertain the due date or determine whether filing extensions had been requested or obtained. Instead, she relied exclusively on her attorneys to make sure that any filing deadlines were complied with. She became aware that the return was delinquent no later than March 1970, when the petition to oust her as executrix was filed by Florence and Sidney, but even then she assumed no personal responsibility for filing the return in an expeditious manner. She did not monitor the progress of the attorneys in the preparation of the return or otherwise attempt to minimize any further delays. On August 10, 1965, Sidney and petitioners Irene and Florence each received a check for $ 6,027.34 which represented his or her share of an annuity owned by decedent worth $ 23,440.53 at the date of death. On January 1, 1973, one-third of the stock in decedent's probate estate was distributed to each petitioner. This stock was the same stock which decedent owned at her death, with the exception of minor trading activity and stock dividends and splits occurring after the date of death. Each petitioner's stock had a fair market value of $ 43,000 on the date of distribution. On October 1, 1974, each *615 petitioner received $ 3,000 as her respective share of decedent's equity in dissolution of Clara's, Ltd. Petitioners Irene and Florence received the foregoing distributions of liquidation proceeds and stock as beneficiaries under decedent's will. Petitioner Phyllis, on the other hand, acquired the stock and liquidation proceeds indirectly as the sole beneficiary under the will of her husband, Sidney, who died testate on February 24, 1972. Neither Irene, Florence, Sidney nor Phyllis provided any consideration for the transfers. All the assets in the Rae Berliant estate have been distributed. OPINION Rae Berliant died on November 4, 1964, a resident of Chicago, Illinois. She was survived by four children, Irene, Florence, Sidney and Ernest. Only Irene, Florence and Sidney were named as beneficiaries in her will. Her estate was closed on June 30, 1972, although the final distribution of assets to the beneficiaries did not take place until October 1, 1974. Sidney died on February 24, 1972, leaving his wife Phyllis as the sole beneficiary under his will. We must decide whether petitioners Irene and Florence are liable as transferees, and Phyllis as a transferee of a transferee, *616 for any unpaid estate tax of the estate of Rae Berliant. 1. Issues pertaining to petitioners' transferee liability
Section 6901(a) [4] states that the unpaid estate tax liability of an estate may be assessed against and collected from a transferee of its assets in the same manner as the estate itself. However, section 6901(a) does not actually create transferee liability; it merely provides an alternative procedure for collecting the unpaid taxes of the transferor. The substantive liability of the transferee must be determined under state law with respondent being viewed in the same light as any other creditor of the transferor. Commissioner v. Stern,357 U.S. 39 (1958). Since decedent was a resident of Illinois at her death and her estate was administered under its laws, we must look to Illinois law to determine whether the petitioners were liable, at law or in equity, for the estate's taxes. Respondent bears the burden of proving that the petitioners were liable as transferees of the estate, whereas the petitioners bear the burden of proving that the estate did not owe the underlying tax. Section 6902(a); Rule 142(d), Tax Court Rules of Practice and *617 Procedure.
Somewhat different principles apply, however, where the property received by the transferee passes outside the probate estate. Section 6324(a)(2) [5] states that where property is included in the gross estate pursuant to sections 2034 through 2042, the transferee of the property (such as a surviving joint tenant or remainderman beneficiary) automatically becomes personally liable for the estate tax to the extent of the date of death value of the property received. Such a person is also considered a transferee under section 6901(h), [6] thereby permitting *618 the liability created by section 6324(a)(2) to be assessed and collected according to the rules specified in section 6901. Thus, substantive transferee liability with respect to nonprobate assets is ordinarily supplied by section 6324(a)(2), making an examination of state law unnecessary. See Schuster v. Commissioner,312 F.2d 311, 314-316 (9th Cir. 1962), affg. 32 T.C. 998 (1959) and revg. on another issue 32 T.C. 1017 (1959); Groetzinger v. Commissioner,69 T.C. 309, 316-317 (1977); Bergman v. Commissioner,66 T.C. 887, 892 (1976). *619 Based on the foregoing provisions, [7] respondent contends that the petitioners are liable as transferees for the value of the following property acquired on or after the date of decedent's death: Description
Date Received
Irene
Florence
Phyllis
Stock
January 1, 1973
$ 43,000.00
$ 43,000.00
$ 43,000.00
Proceeds in
dissolution of
Clara's, Ltd.
October 1, 1974
3,000.00
3,000.00
3,000.00
Annuity
August 10, 1965
6,027.34
6,027.34
Joint tenancy
property
Date of death
7,000.00
35,920.87
Trust accounts
Date of death
23,218.32
31,459.04
$ 82,245.66
$ 119,407.25
$ 46,000.00
A. Liability with respect to probate assets
We will first consider those assets which were part *620 of the probate estate, namely, the stock and proceeds in dissolution of Clara's, Ltd. The petitioners concede that these assets were administered as part of the probate estate and were reported on the Federal estate tax return as part of decedent's gross estate. They also concede that they received the assets on the dates indicated above as the named beneficiaries of the estate (or in Phyllis' case, as the sole beneficiary under the will of her husband, who was in turn a beneficiary of the estate). Thus, on the face of it, there would appear to be no question that Sidney and petitioners Irene and Florence qualify as transferees of the estate under section 6901(h) as well as section 301.6901-1(b), Proced. & Admin. Regs., which defines the term "transferee" to include an heir, legatee, devisee or a distributee of an estate. Phyllis, in turn, would be considered a transferee of a transferee, since she received the property as the sole legatee under Sidney's will. [8]
*621 The petitioners agree that they are transferees with respect to the proceeds in liquidation of Clara's, Ltd., and that the property was properly includable in the gross estate. However, they take a contrary position with respect to the stock, claiming that they, rather than decedent, were the true owners of the property when she died. The gist of their claim is that decedent's children regularly gave her money to invest on their behalf, and the stock in question was acquired with those funds with the decedent assuming the role of a "nominee" titleholder. Although they do not specifically say so in their sketchy and confusing briefs, the petitioners apparently believe that the stock was erroneously included in both the probate estate and the Federal gross estate, and that the property they received was not "property of a decedent" within the meaning of section 6901(a)(1)(A)(ii). In our view the fact that the stock was titled in the decedent's name and administered as part of the probate estate raises, at the very least, a strong presumption that the property was actually owned by the decedent. The other evidence in this case, such as it is, does little to undermine that presumption. *622 Irene, Florence and Phyllis each testified that decedent's children regularly turned over all of their wages, gifts and other income to their mother while they resided at the family residence, and continued to make regular contributions to her out of their salaries or business income after they married and moved elsewhere.Florence also testified that she and her husband regularly supplied decedent with free food from their grocery store. Irene, Florence and Sidney allegedly continued to make these contributions until their mother died in 1964. The witnesses characterized these transfers not as gifts to be used for their mother's support and maintenance, but rather as transfers in trust with the intention that the funds be invested by decedent for their benefit. They stated that their mother repeatedly assured them that the money she was investing was theirs, and that eventually they would get the money back, plus a return on their investment. Florence was also allegedly promised that she would be repaid for the food she and her husband provided. We have made a careful study of the lengthy and confusing record in this case and have not found any competent, reliable evidence *623 to support the petitioners' story. Although we are willing to accept that the children gave the decedent money on occasion, we are not about to fix a dollar figure based on the flimsy evidence which we have before us. None of the children maintained any records of the amounts which he or she had contributed to the decedent. As a result, the principal evidence of the size and frequency of the contributions is the petitioners' testimony, which we found to be vague, self-serving and generally unreliable. [9] Moreover, they admitted to having no knowledge of the total amounts which the children had given the decedent. To get around this glaring weakness in their case, the petitioners maintain that Rae Berliant had no other sources of income after her husband died in 1933, and therefore the substantial investment portfolio which she accumulated was necessarily derived from their contributions. We do not accept this explanation. To begin with, the record indicates that decedent received property or income from several different sources other than her children. For example, she received at least $ 10,000 in life insurance proceeds and inherited a certain amount of other property [10] when *624 her husband died. She also was a beneficiary of a trust established by her grandfather and held an interest in an investment company (Clara's, Ltd.) which had been funded with the assets of her grandmother's estate. From these latter two sources decedent had documented receipts of at least $ 11,781.91 during her lifetime, and she may well have received considerably more than this amount. More importantly, however, it appears likely that much of decedent's accumulated wealth was actually generated by her own efforts. The record reveals her to have been both a sharp businesswoman and an inveterate miser who lived without luxuries and even scrimped on necessities in order to save money. Although she never held a formal job, she did trade in the bond and stock markets on her own account and apparently was quite successful at it. Thus, we are unwilling to accept the proposition that decedent rode completely on the backs of her children as she amassed her fortune. *625 Even if the petitioners had established to our satisfaction the amounts of their respective contributions, we would still take issue with their characterization of the payments as transfers in trusts rather than outright gifts. As we have stated, the children kept no records of their contributions and made no attempt to ascertain the extent of their interests in decedent's assets relative to one another. They never questioned decedent about the size of their respective shares in the alleged investment pool. They rarely, if ever, inquired as to the size or nature of the investments. It strains credulity to think that the children would routinely turn over large sums of money to their mother over a period of many years, particularly after they moved out of the family household and began raising families of their own, and yet remain totally in the dark as to the amount of their relative contributions, the nature and soundness of the investments, and the amount of investment income which was being generated. Other facts belie the existence of the fiduciary or custodial relationship alleged by the petitioners, not the least of which is that the stock was titled solely in the decedent's *626 name. There is absolutely no evidence to support petitioners' claim that the decedent was merely a "nominee" titleholder. Rather, it appears to us that she exercised complete dominion and control over the property and was at all times its true owner. This is borne out by the fact that the children never requested or received any distributions of investment income or corpus from the decedent before she died. In addition, the income earned on the investments was consistently reported on the decedent's income tax returns rather than those of the children. [11]
*627 Finally, the petitioners have failed to explain why the stock was reported on the estate tax return. If the joint tenancy property and totten trust accounts were left off the return on the theory that the surviving tenants and beneficiaries had supplied the consideration for the property, why then was the stock not omitted for the same reason? Moreover, while the petitioners contend that all of the stock owned by decedent (valued at $ 126,651.35) was acquired with the children's funds, Irene, Florence and Sidney took a markedly different position in the probate litigation, where they argued that only $ 60,000 of the property to which decedent held legal title was derived from their contributions.We have been given no explanation for this inconsistency, either. The foregoing discussion highlights only the major points which we think require us to hold for respondent on this issue. We have not attempted to dissect the record and comment on the relevance of each and every bit of documentary or testimonial evidence contained therein, as respondent has so painstakingly done on brief. Suffice it to say that after carefully sifting through the evidence and weighing the credibility *628 of the witnesses, we are satisfied that respondent has met his burden of proof. Accordingly, we hold that the petitioners are transferees of the stock received from the decedent's estate for purposes of section 6901. [12]
The next issue to be decided is whether the petitioners are liable as transferees under Illinois law [13] for any taxes due from the estate. In most jurisdictions creditors are provided some form of recourse against the legatees or devisees of a decedent where the assets of the estate are distributed before all claims are fully satisfied. See generally 97 C.J.S. Wills sec. 1325 (1957). The creditor may have either legal or equitable remedies or both, depending on the particular circumstances involved. According to sec. 293, ch. 3, Ill. Ann. Stat. (Smith-Hurd 1961), [14] the Illinois probate court may, upon the petition of any interested person, order *629 a distributee to refund all or a part of his distributive share in order to pay any claims "entitled to be paid from the estate distributed." Normally claims are not "entitled to be paid" unless they are filed within the nine-month claims period provided under the Illinois nonclaim statute. See sec. 204, ch. 3, Ill. Ann. Stat. (Smith-Hurd 1961). However, claims of the United States[15] are not subject to this limitation. See United States v. Summerlin,310 U.S. 414 (1940); In re Estate of McBride,110 Ill. App.2d 200, 249 N.E.2d 266 (Ill. App. Ct. 1969); see also Dillman v. Commissioner,64 T.C. 797 (1975). Thus, we think the petitioners would be liable as distributees under this provision for the Federal estate tax owed by the Rae Berliant estate. *630 In addition, Illinois law also affords an equitable remedy to creditors whose claims were contingent and did not mature until after the expiration of the claims period. In the event the undistributed assets of the estate are insufficient to discharge such claims, the creditor may seek relief in equity against the beneficiaries to the extent of the value of the assets previously distributed to them. See In re Bird's Estate,410 Ill. 390, 102 N.E.2d 329, 333 (1951); Olsen v. Hartford Accident & Indemnity Co.,368 Ill. 194, 13 N.E.2d 159, 161 (1938); Union Trust Co. v. Shoemaker,258 Ill. 564, 101 N.E. 1050, 1052-1053 (1913); Snydacker v. Swan Land & Cattle Co.,154 Ill. 220, 40 N.E. 466, 467-468 (1895). We think respondent's claim would be similarly enforceable. Although the liability for estate taxes is not, strictly speaking, contingent, since the obligation to pay becomes fixed as of the date of death, the actual amount of the liability may not be ascertainable until months or even years later. In addition, as we pointed out earlier, the normal claims limitation period does not apply to claims of the United *631 States. Thus, we think the rationale for allowing equitable relief with regard to contingent claims which mature after the claims period has expired and the estate is distributed would apply with equal force to outstanding estate tax claims. Accordingly, we hold that under Illinois law the petitioners are liable as transferees for any unpaid estate tax to the extent of the value of the stock and liquidation proceeds which they received. [16]
*632 B. Liability with respect to nonprobate assets
We next examine the transferee liability of petitioners Irene and Florence [17] with respect to their receipt of the jointly held stock [18] and savings accounts, totten trust accounts and annuity proceeds. They acquired this property by virtue of their rights as surviving joint tenants or beneficiaries rather than as legatees under decedent's will. If the property received is includable in the gross estate under one or more of sections 2034 through 2042, then section 6324(a)(2) imposes personal liability upon Irene and Florence for any tax due from the estate to the extent of the value of such property at the date of decedent's death. *633 Under section 6902(a) respondent has the burden of proving that the property was required to be included under one of the specified Code sections. The joint tenancy property is, by virtue of the form of ownership, [19] includable under section 2040 [20] except to the extent that Irene and Florence can prove that they contributed to the cost of the property. In the case of the totten trust accounts, the petitioners have agreed that the amounts are includable under sections 2036, 2037 and 2038 unless they can prove that either (1) they were the actual owners of the property during decedent's lifetime, which is another way of saying that decedent never had an interest in the property which could be the subject of a transfer described in those sections, or (2) that they gave adequate consideration for the interests transferred. To simplify the presentation, we will defer consideration of these issues until the section of this opinion dealing with the deficiency issues, where we must decide whether the value of all the joint tenancy property and trust accounts (not just the property received by Irene and Florence) is includable in the gross estate. We should point out, however, that *634 in our judgment respondent has met his burden of proof on the question of transferee liability by establishing that the joint tenancy property and totten trust accounts are includable under sections 2040 and 2036-2038, respectively, assuming Irene and Florence are unable to prove that the source of the property was their own contributions. *635 The receipt of the annuity proceeds presents a different situation. The parties have stipulated that the value of the annuity at the date of death ($ 23,440.53) should have been included in the gross estate, but was not. Although they did not stipulate which inclusion section applies, it seems reasonably clear to us that the governing provision would have to be either section 2039 or section 2042. The record gives no indication that the annuity was at any time subject to estate administration, nor does it suggest that Irene and Florence received the cash distributions as beneficiaries under decedent's will. Rather, it appears to us that they became entitled to the proceeds because they were named as beneficiaries in the annuity contract. Instead of accepting the benefits in the form of monthly payments, the beneficiaries each received a lump-sum payment of $ 6,027.34, presumably through the exercise of a settlement option provided in the contract. While we do not have enough information about the contract to pinpoint precisely the operative Code section, we are satisfied, under the circumstances, that it is section 2039 or section 2042, and not section 2033, which provides *636 the appropriate basis for inclusion. Since section 6324(a)(2) specifically applies to property included in the gross estate by way of sections 2039 or 2042, we hold that Irene and Florence are liable as transferees for any unpaid estate taxes to the extent of the amount of the annuity proceeds they received. [21]
2. Issues pertaining to the underlying deficiency and addition to tax
A. Inclusion of the joint tenancy property and totten trust accounts in the pgross estate
In his notices of liability respondent determined that the following property was improperly omitted from decedent's estate tax return: Date of Death
Description
Balance or Value
Jointly held stocks, bonds and
savings accounts
$ 59,624.37
Totten trust accounts
106,293.32
*637 Upon the death of decedent this property passed by operation of law to the respective surviving joint tenants (decedent's children) and trust beneficiaries (decedent's children and grandchildren). Respondent maintains that the joint tenancy property is includable under section 2040, which provides that the value of property held by a decedent and any other person as joint tenants is included in his estate except to the extent that it can be shown that the surviving tenant contributed to the cost of the property. The estate has the burden of proving such contributions, and in this case that burden also falls upon the petitioners. Section 6902(a). The petitioners' arguments on this issue parallel the arguments they presented in their attempt to insulate themselves from transferee liability with the respect to decedent's solely held stock: the children supplied the consideration for the jointly held property through regular contributions to the decedent out of their separate property, decedent had no other sources of income so the property must necessarily be theirs, etc. We reject these arguments on the same grounds we discussed earlier. There is no reliable evidence to indicate *638 how much the children contributed, or that the children intended the transferred funds to be used in the acquisition of jointly held property. On this record we conclude that any contributions were gifts to the decedent and the joint tenancy property was acquired with the decedent's own funds.Thus, the full value of the property must be included in the gross estate. We reach a similar conclusion with respect to the totten trust accounts. Decedent retained full use and enjoyment of the funds until her death, at which time the property passed by operation of law to the beneficiaries named in the trust agreements. This property is includable under sections 2036, 2037, or 2038 except to the extent the petitioners can demonstrate that decedent never owned the amounts in question, or, alternatively, that the children gave adequate consideration for the interests transferred to them.They have done neither. Accordingly, we hold that the petitioners have failed to meet their burden of proof with respect to both the joint tenancy property and trust accounts and the date of death value of such property must be included in the gross estate. B. Deductibility of attorney's fee
*639 This issue concerns the deductibility of the $ 3,500 fee paid to attorney Aaron Jacobs, who represented Florence and Sidney in their petition to remove Irene as executrix of the estate. The probate court approved the fee and ordered it paid out of the assets of the estate, stating that the services rendered by the attorney were "for and on behalf" and "in the best interests" of the estate. The petitioners maintain that the payment is deductible by the estate under section 2053(a), [22] which authorizes a deduction for administration expenses allowable under the laws of the jurisdiction where the estate is being administered. Respondent contends that the legal fee is nondeductible because it was a direct consequence of Irene's failure to discharge her duties as executrix in a competent manner. In other words, respondent's position is that the Federal Government should not be required to subsidize Irene's incompetence through the allowance of an estate tax deduction. We disagree. *640 The position of this Court is that administration expenses must pass two hurdles in order to be deductible: (1) they must be allowable under state law, and (2) they must satisfy the conditions set forth in respondent's regulations. [23]Estate of Posen v. Commissioner,75 T.C. 355 (1980). However, the Court of Appeals for the Seventh Circuit, to which the appeals in these cases would lie, has stated that "[a]s a general rule the decree of a probate court approving expenditures as proper administrative expenses under state law will control." Estate of Jenner v. Commissioner,577 F.2d 1100, 1106 (7th Cir. 1978), revg. a Memorandum Opinion of this Court; see also Ballance v. Commissioner,347 F.2d 419, 423 (7th Cir. 1965), and our discussion in Estate of Posen v. Commissioner,supra at 366-367. This test is clearly satisfied in the present case, since the attorney's fee was specifically approved for payment in a probate court order. [24] There is some uncertainty, though, as to whether the Court of Appeals considers allowability under local law to be the conclusive test of deductibility. In Estate of Jenner v. Commissioner,supra at 1105, n. 12, *641 the Court expressly reserved judgment on the question of whether the regulations "improperly add to or override" the requirement in the Code that administration expenses be allowable under local law. It would appear, then, that this is not a case which would call for the application of our rule in Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), and obviate the necessity of testing the claimed deduction against respondent's regulations. *642 In our judgment, however, there is nothing in the regulations (see note 23, supra) which would require that the deduction be disallowed. Section 20.2053-1(b)(2), Estate Tax Regs., states that the decision of a local court as to the amount and allowability under local law will ordinarily be accepted if it appears that the court actually passed on the merits of the claim. The record leads us to believe that the Illinois probate court did exactly that. In addition, we think that the fee was "essential to the proper settlement of the estate," as required by section 20.2053-3(a), Estate Tax Regs., because the related legal services were aimed at expediting Irene's filing of the Final Account and the required tax returns. The end product of the litigation was a court order directing Irene to take care of those matters within 90 days. The probate court later characterized Aaron Jacobs' fee as "in the best interests" of the estate, and we can perceive of no sound basis for holding otherwise. Accordingly, the estate is entitled to deduct the $ 3,500 fee as an administration expense under section 2053(a). C. Late filing addition
Section 6651(a)(1) imposes an addition to *643 tax where the taxpayer's return is filed after the prescribed due date unless the delay is due to reasonable cause. Section 301.6651-1(c)(1), Proced. & Admin. Regs., provides that reasonable cause exists where the taxpayer exercises ordinary business care and prudence and is still unable to file the return within the statutory time period. It is well established that ignorance of the need to file a tax return will not, in and of itself, excuse a taxpayer from liability for the addition to tax for late filing. Estate of Lammerts v. Commissioner,54 T.C. 420, 445 (1970), affd. per curiam on this issue 456 F.2d 681, 683 (2d Cir. 1972). It is also well established that a personal representative has a positive duty to ascertain the nature of his or her responsibilities as the fiduciary of the estate and that this duty is not satisfactorily discharged by delegating the entire responsibility for filing the estate tax return to the attorney for the estate. Estate of Lammerts v. Commissioner,supra at 446; Estate of Geraci v. Commissioner,T.C. Memo. 1973-94, affd. per curiam 502 F.2d 1148 (6th Cir. 1974); *644 see Estate of Duttenhofer v. Commissioner,49 T.C. 200, 204-206 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). Rather, the personal representative must, at a minimum, ascertain the due date of the return and take appropriate steps to insure that the attorney acts diligently to fulfill the filing obligation.Estate of DiRezza v. Commissioner, 78 T.C.     (1982) (slip op. p. 25); Estate of Rapelje v. Commissioner,73 T.C. 82 89-90 (1979); Estate of Lillehei v. Commissioner,T.C. Memo. 1979-464, affd. per curiam 638 F.2d 65 (8th Cir. 1981); Estate of Mayer v. Commissioner,43 T.C. 403, 406 (1964), affd. per curiam 351 F.2d 617 (2d Cir. 1965); Estate of Geraci v. Commissioner,supra.
The Seventh Circuit has also taken a fairly strict stand on this issue, holding that "when there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due." See United States v. Kroll,547 F.2d 393, 396 (7th Cir. 1977), as well as the more recent opinion in Fleming v. UnitedStates,648 F.2d 1122, 1126 (7th Cir. 1981). *645 At the same time, however, the Seventh Circuit has recognized that in the final analysis each case must turn on its own particular facts and circumstances. See Rohrabaugh v. United States,611 F.2d 211, 217 (7th Cir. 1979). Decedent died on November 4, 1964.On January 18, 1965, decedent's will was admitted to probate and Irene was appointed executrix. The estate tax return was due on February 4, 1966, 15 months after decedent's death, [25] but was not filed until December 16, 1971, over 5-1/2 years late. As a result, respondent imposed on the estate the maximum 25 percent addition authorized by section 6651(a)(1).
The petitioners contend that the delinquency was due to reasonable cause for the following reasons: Irene had only a high-school education and never before served as an executrix of an estate; she regularly communicated with the attorneys concerning the status of the estate tax return; she was variously told by the attorneys that the return was on extension, that it could not be filed until the probate litigation *646 was concluded, and that there was no cause for concern; and she did not become aware that the return was overdue until after it was filed. Were these allegations adequately supported by the evidence, the petitioners would have a fairly respectable argument that the late filing was excusable under the circumstances. However, in our judgment they have completely failed to carry their burden of proof on this issue and we are constrained to hold for respondent. The only evidence which the petitioners produced in support of their position was Irene's testimony.She attempted to portrary herself as a conscientious executrix who kept in constant touch with her attorneys regarding the status of the return. She testified that she was told by Maurice Zimmerman, her first attorney, that a filing extension had been granted by the Internal Revenue Service. She further testified that after Mr. Zimmerman was discharged she hired attorneys Gregory Gelderman and William McMillan to prepare the estate tax return and also handle the probate litigation between Ernest and the estate. She later hired attorney John Vosnos to prepare the return, but he allegedly told her that nothing could be done *647 until the probate litigation was settled. She indicated that she was reassured by Mr. Vosnos on a number of occasions that "everything was all right" and that there was no need to worry about the filing of the return. To put it simply, we do not believe much of Irene's self-serving testimony. Her story was confusing, disjointed and not corroborated by any other competent evidence. Mr. Zimmerman, whose testimony would have been particularly revealing, was not called as a witness.The only attorney who did testify, Mr. Gelderman, stated that he and his associate were hired solely to represent the estate in the probate litigation, and flatly denied any responsibility for the preparation or filing of the estate tax return. Furthermore, concerning Mr. Zimmerman's purported assurances that an extension had been obtained, we think it strange, to say the least, that such a highly significant matter was nowhere mentioned in a previous explanation of the late filing contained in an interrogatory response which was read into the record at trial. Finally, we find it difficult, if not impossible, to believe that until 1972 Irene was unaware that the return was delinquent. Even if she had *648 no suspicions on this score during the first five years after decedent's death (and we hasten to add that we doubt that to be the case), she surely must have been alerted to the problem when Florence and Sidney filed their petition to oust her as executrix in March 1970. [26] The petition complained specifically of her "failure and refusal" to file the estate tax return, and warned that the estate might be penalized for the delay. [27] This prompted the probate court to issue an order directing Irene to file the returns in 90 days or face removal as executrix and a possible surcharge for any penalties and interest which might be owing. Under these circumstances we think Irene's plea of ignorance simply cannot be taken seriously.
*649 Since we refuse to accept Irene's testimony at face value, we are left without a satisfactory explanation for the over 5-1/2 year delay in filing the return. The probate litigation with Ernest may have made it difficult to determine the exact amount of the estate tax liability, but it did not prevent the estate from filing a timely return based on reasonable projections and thereafter filing an amended return should that prove to be necessary. See Estate of Duttenhofer v. Commissioner,supra at 206-207; Estate of Sikler v. Commissioner,T.C. Memo. 1981-587. The fact is that Irene knew the return had to be filed, and she had a positive duty to do so on time. We cannot say on this record that she made reasonable efforts to carry out this responsibility. Accordingly, we hold that the petitioners have not established reasonable cause for the late filing and the addition to tax is sustained. To give effect to concessions and our conclusions on the disputed issues, [28]
*650 Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Irene Magill, docket No. 9094-74; Florence Kraft, docket No. 9126-74; Phyllis Berliant, docket No. 9127-74.↩
2. Respondent determined that each petitioner was liable for the full amount of the estate tax deficiency and addition to tax.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of Rae Berliant's death, unless otherwise indicated.↩
4. SEC. 6901. TRANSFERRED ASSETS. (a) METHOD OF COLLECTION.--The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) INCOME, ESTATE, AND GIFT TAXES.-- (A) TRANSFEREES.--The liability, at law or in equity, of a transferee of property-- (ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), * * * in respect of the tax imposed by subtitle A or B.↩
5. The pertinent portion of section 6324(a)(2) reads as follows: SEC. 6324. SPECIAL LIENS FOR ESTATE AND GIFT TAXES. (a) LIENS FOR ESTATE TAX.--* * * (2) LIABILITY OF TRANSFEREES AND OTHERS.--If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. * * * ↩
6. SEC. 6901. TRANSFERRED ASSETS. (h) DEFINITION OF TRANSFEREE.--As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax.↩
7. We should point out that, although Irene was the executrix of the estate, respondent has not attempted to assert against her the personal liability imposed on fiduciaries by R.S. sec. 3467 (1878), 31 U.S.C. sec. 192↩ (1976). See section 6901(a)(1)(B). Her liability is predicated solely on her status as a transferee of the assets of the decedent pursuant to section 6901(a)(1)(A)(ii) and section 6324(a)(2).
8. It is well-settled that liability under section 6901 can be asserted against a transferee of a transferee. See Estate of Goldsborough v. Commissioner,70 T.C. 1077, 1086-1087 (1978), affd.     F.2d     (4th Cir. 1982); Fibel v. Commissioner,44 T.C. 647, 658-660↩ (1965); see also section 6901(c)(2).
9. The testimony of the petitioners was frequently contradicted by other evidence. For example, Irene and Florence both testified that they never received any gifts from the decedent, and yet in the probate litigation they (along with Sidney) admitted that the decedent had made "substantial gifts" to her children when she established the jointly owned and totten trust savings accounts. ↩
10. We are somewhat skeptical of Irene's testimony that decedent's husband, who was a practicing physician, left only $ 100 in a checking account when he died.↩
11. For these same reasons we reject the petitioners' contention that a resulting trust was imposed on the stock at the moment it was acquired by the decedent. Resulting trusts may arise under Illinois law where one person furnishes the consideration for property and title is taken in the name of another. However, to justify the declaration of such a trust, "the evidence must be clear, convincing and unmistakable." Hanley v. Hanley,14 Ill. 2d 566, 152 N.E.2d 879, 883 (1958); see also In re Estate of Habel,88 Ill. App.2d 194, 231 N.E.2d 616 (Ill. App. Ct. 1967); Hocking v. Hocking,76 Ill. App.3d 29, 394 N.E.2d 653↩ (Ill. App. Ct. 1979). The evidence in this case falls far short of this standard.
12. This also means, of course, that the stock was properly included in the gross estate for Federal estate tax purposes. The parties have stipulated that the correct valuation of the stocks as of the date of death was $ 126,651.35 rather than $ 126,457.76 as originally reported on the estate tax return.↩
13. All references to Illinois statutory law are to the statutes in effect at the time of the transfers in question. ↩
14. § 293. Refunding by Distributees If at any time after payment of a distributive share it becomes necessary for all or any part of the distributive share to be refunded for the payment of any claim entitled to be paid from the estate distributed the probate court upon the application of any interested person shall order the distributee to refund that portion of his distributive share which is necessary to pay the claim. If there is more than one distributee the court shall apportion among the distributees the amount to be refunded according to the amount received by each of them, but specific legacies need not be refunded unless the residue is insufficient to satisfy the claims entitled to be paid from the estate distributed. If a distributee refuses to refund within sixty days after being ordered by the court to do so and upon demand, * * * a civil action may be maintained by the executor or administrator against the distributee * * * for the amount due together with the expenses of recovery including reasonable attorney's fees. The order of the probate court is evidence of the amount due. ↩
15. Under Illinois law the Federal estate tax liability is considered to be a claim against the estate and is assigned third-class payment priority behind funeral and administration expenses and the surviving spouse's or child's award. See In re Estate of Grant,83 Ill.2d 379, 415 N.E.2d 416, 419↩ (1980); sec. 202, ch. 3, Ill. Ann. Stat. (Smith-Hurd 1961).
16. Arguably petitioners' transferee liability could also be said to derive from the Illinois fraudulent conveyence statutes, which provide as follows (secs. 4, 5, ch. 59, Ill. Ann. Stat. (Smith-Hurd 1972)): § 4. FRAUDULENT CONVEYANCES, ETC. Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons. § 5. INNOCENT PURCHASER The foregoing section shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. [Fn. ref. omitted.] Under Illinois jurisprudence the fraudulent intent referred to in these statutes must be specifically proved if the conveyance is supported by adequate consideration. On the other hand, if there is no consideration or insufficient consideration and the transfer impairs the rights of creditors (which we find to be the case here), then fraud is presumed and no inquiry into the debtor's motives is necessary. See Stopka v. Commercal Embroidery, Inc.,     Ill. App.3d    , 428 N.E.2d 1130, 1132 (Ill. App. Ct. 1981); Wilkey v. Wax,82 Ill. App.2d 67, 225 N.E.2d 813, 814 (Ill. App. Ct. 1967); see also Mendelson v. Commissioner,52 T.C. 727, 734 (1969), and Tcherepnin v. Franz,475 F. Supp. 92 (N.D. Ill. 1979). Respondent has relied exclusively on these provisions as the source of petitioners' transferee liability. However, while we do not necessarily disagree with respondent's theory, we prefer to rest out holding on the statutory and case law which we think was specifically aimed at protecting the rights of creditors where a distribution to beneficiaries takes place before all allowable claims are satisfied. Compare Hamar v. Commissioner,42 T.C. 867, 873-875↩ (1964).
17. Respondent has conceded that petitioner Phyllis is not liable as a transferee with respect to the jointly held savings accounts, totten trust accounts and annuity proceeds received by her husband before his death in 1972. ↩
18. For reasons which we do not fully understand, respondent has conceded that Florence is not liable as a transferee with respect to the Cities Service stock valued at $ 528.50, although he continues to maintain that the property is includable in the gross estate under section 2040 and therefore constitutes part of the underlying estate tax deficiency. We accept this concession, notwithstanding that it appears to fly in the face of the parties' stipulation that Florence took possession and control of the stock at decedent's death by virtue of her rights as a surviving tenant.↩
19. On brief the petitioners contend that the jointly owned savings accounts were not held as joint tenants with rights of survivorship, but rather as tenants in common, a form of ownership to which section 2040 does not apply. See section 20.2040-1(b), Estate Tax Regs. This argument is without merit. The parties stipulated that the savings accounts were titled in the names of "Rae Berliant or [one of the children], as joint tenants with the right of survivorship and not as tenants in common." They also stipulated that Irene, Florence and Sidney received and took possession and control of their respective jointly held savings accounts upon the death of decedent, and presumably Ernest did the same thing with respect to his jointly held savings account. This is hardly consistent with the legal characteristics associated with a tenancy at common. ↩
20. SEC 2040. JOINT INTERESTS. The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further,↩ That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.
21. Since liability under section 6324(a)(2) is measured by the value of the property at date of death, it would seem that Irene and Florence would each be personally liable to the extent of one-third of the annuity value on that date, or $ 7,813.51, rather than the lesser amount of the subsequent cash distributions. However, because respondent has made no argument to that effect, we will infer a concession on this issue and limit petitioners' liability to the actual cash received.↩
22. SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES. (a) GENERAL RULE. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts -- (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on, or ady indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.↩
23. The pertinent regulations provide, in part, as follows: § 20.2053-1. Deductions for expenses, indebtedness, and taxes; in general -- (b)(2) Effect of court decree. The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. However, the decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the meritsof the claim. * * * § 20.2053-3 Deduction for expenses of administering estate -- (a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" of the first category (see paragraph (a) and (c) of § 20.2053-1) are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses. Each of these classes is considered separately in paragraphs (b) through (d) of this section. (c) Attorney's fees.
(3) Attorneys' fees incurred by beneficiaries incident to litigation as to their respective interests are not deductible if the litigation is not essential to the proper settlement of the estate within the meaning of paragraph (a) of this section. An attorney's fee not meeting this test is not deductible as an administration expense under section 2053 and this section, even if it is approved by a probate court as an expense payable or reimbursable by the estate. ↩
24. In determining whether an expense is allowable under local law for Federal estate tax purposes, this Court is not necessarily bound by the decision of the probate court which approved the expense for payment, and is free to make an independent examination of state law to determine if the allowance was proper. See Estate of Reilly v. Commissioner,76 T.C. 369, 372 (1981); Estate of Posen v. Commissioner,75 T.C. 355, 359↩ (1980). However, respondent has not shown us any authority, nor have we been able to locate any, which would indicate that the probate court overstepped its bounds in approving the Aaron Jacobs fee.
25. See section 6075(a). For decedents dying after December 31, 1970, the period specified in section 6075(a) has been changed to nine months.↩
26. The Seventh Circuit has recognized that if the executor continues to delay filing the return after becoming aware that it is overdue, the imposition of the penalty may be warranted even though the initial delay was supported by reasonable cause ( United States v. Kroll,547 F.2d 393, 396 (7th Cir. 1977)): Whether or not [the executor] knew the date of the deadline (October 13, 1968) before it passed, he was apprised on January 9, 1969 that the deadline had passed three months previously. His reliance on [the attorney] from this date onwards was not an exercise of ordinary business care and prudence. [Fn. ref. omitted.] ↩
27. It appears that Florence, and presumably Phyllis as well, have undergone a drastic change of heart since the time of the probate proceeding on the question of whether Irene's delay in filing the return was justified.↩
28. At the parties' request we have left the resolution of the amounts of interest owed by the petitioners to the computations to be submitted under Rule 155, Tax Court Rules of Practice and Procedure.↩