Ruth Wilkey, Administrator of the Estate of David Wilkey, Deceased, and Ruth Wilkey, Plaintiffs, Discovery-Citation, Petitioners-Appellees, v. William A. Wax, Defendant, and Ramona A. Wax, Discovery-Citation, Respondent-Appellant.

Gen. No. 10,797.

Fourth District.

April 20, 1967.

Jack E. Horsley and John P. Ewart of Craig & Craig, and Fred H. Kelly, of Mattoon (Fred H. Kelly, of Mattoon, and Burt Greaves of Champaign, of counsel), for appellant.

William F. Meehling, of Marshall (Victor C. Miller, of counsel), for appellees.

SMITH, J.

■ Every lawyer has had the experience of being importuned at one time or another by frantic clients who wish to be stripped of their properties and have them shed in favor of spouses, relatives or friends. Such generosity is rightly suspect for largess is not the way of the world. A little friendly cross-examination to plumb the depths of motive quite often brings forth the intelligence that the client has been sued, or rather, is about to be sued. He may not know it, but the law expects men to be just, before they are generous—and not the other way around. The trouble with their wish is that their intent is not really donative but rather one to thwart the oncoming creditor. Now, even the least sophisticated debtor or debtor to be, on reflection, has some hazy notion that this subterfuge won't work. More sophisticated is the approach of preferring one creditor over another, or effecting transfers to favorites where the consideration may be deemed adequate in law and doesn't involve hard cash. Of course, the ne plus ultra is to sell everything to innocent purchasers for value and dissipate the proceeds. Understandably, few debtors take this tack, rather, they attempt to make other "arrangements," and such arrangements are as varied and ingenuous and disingenuous as people are varied, ingenuous and disingenuous. Sometimes they suffer a judgment or decree against them. There is, of course, nothing wrong in preferring one cred-

69

itor over another so long as it is not done with an intent to defraud the other one. But if there is an intent to defraud another creditor, and if the transferee-creditor knows of such intent, or indeed, a purchaser, the conveyance is void as to the other creditor. We characterize such as fraudulent transfers or conveyances.

 Without explicitly saying so, we have spelled out in passing the two distinct grounds of fraud whereby a debtor's conveyances will be deemed fraudulent so far as creditors are concerned. If there is no consideration for the transfer, it is "fraud in law," and with consideration, it is "fraud in fact." In fraud in fact cases there must be an actual fraud, a specific intent to defraud creditors. In fraud in law cases, fraud is presumed from the circumstances. 20 ILP 85, 114, Fraudulent Conveyances, §§ 1, 61.

 Since 1819 Illinois has had a statute on fraudulent conveyances. One section provides that every gift, conveyance, assignment or transfer with intent to disturb, hinder, or defraud creditors, or every suit commenced, decree or judgment suffered with such intent, shall be void as against creditors. Section 4, c 59, Ill Rev Stats 1965. This is more or less a facsimile of the English statute on fraudulent conveyances going back to the time of Elizabeth I and beyond. The succeeding section (§ 5) qualifies the impact as to innocent transferees by providing that the title of a purchaser for valuable consideration (fraud in fact) will not be affected unless it appears that the purchaser had notice of the fraudulent intent of his grantor. Initially this all seems at odds with what are generally considered to be an owner's perquisites with regard to his property. Ordinarily we think that an owner has the right to dispose of his property in accordance with his desires, even to the extent of preferring one creditor or another, and this is true if it is done in good faith. However, pervading

70

our entire corpus is the stricture that no one has an absolute right to do anything if it accomplishes a fraudulent result. It is said that a creditor does have a claim upon the property of his debtor which constitutes a fund for payment and the debtor may not ignore the right of the creditor to be paid out of it, hence the ancient caveat that a debtor cannot dispose of his property if such infringes on the rights of his creditors and accomplishes a fraudulent result. This concept is still consonant with the right to exercise extensive discretion in handling one's affairs, and it is certainly not asking too much to require that such discretion be exercised fairly and honestly. It is only if the debtor exceeds these limits that courts will control and regulate such exercise and compel him to do justice to his creditors.

The matter before us concerns transfers by a debtor-husband to his creditor-wife before and after they were divorced. Such were either ordered or approved by the decree divorcing them. The creditor who sought to have these transfers set aside was a judgment creditor ($30,-900) of the debtor-husband. The debtor-husband had murdered creditor's husband. Having obtained this judgment and finding no property of the debtor, she instituted citation proceedings for discovery of assets against the debtor's erstwhile wife who is the respondent here. For clarity, we will refer to the judgment-creditor as "creditor," the husband-debtor as "debtor," and his divorced wife-transferee as "respondent." The trial court found that the transfers were made by debtor to respondent with intent to defraud creditor and entered judgment against respondent for $12,639.52. Reconveyance was ordered for purposes of sale to satisfy this judgment. Respondent appeals urging the propriety of the transfers.

It all began when the debtor murdered creditor's husband. We recently affirmed the conviction. People v.

71

Wax, 75 Ill App2d 163, 220 NE2d 600. The sequence of events—the murder, creditor's wrongful death action, debtor's conviction and sentence (20–35 years), the divorce, the judgment, and the citation proceedings—provide our context. All of the transfers postdated the murder and antedated the judgment. Respondent argues strenuously that the decree provided an imprimatur for the transfers, that the transfers were for a valuable consideration, therefore negating presumptive fraud (fraud in law), and since there was a legal consideration and no proof of actual fraud, the transfers were eminently proper. In the divorce decree, the court found that the parties had two minor children, had accumulated substantial properties, and ordered the debtor to transfer everything he had to respondent in lieu of alimony. Some had already been transferred, and such was specifically approved. Debtor acquiesced, and he had nothing left. In the citation proceedings, the trial court found that the decree was procured by fraud, hence rendering the transfers fraudulent. Did the debtor suffer this decree with a specific intent to defraud creditor, and if so, did respondent partake therein, or at the very least have knowledge of such intent?

We can reasonably infer, we think, that in fact the debtor "suffered" this decree, or at least the decretal portions authorizing and approving the transfers, with such intent, and that respondent had cognizance thereof. Of interest is the happenstance that the decree was obtained in the county of debtor's imprisonment (Will), and not in the county of their residence (Edgar). Respondent indubitably had grounds for divorce and the choice was clearly hers to seek one. We cast no aspersions on the fact that she exercised this right, but this does not mean that the debtor did not suffer the decretal portions relative to the transfers as would belie a specific intent to defraud, much less delay and hinder his creditor in realizing on her judgment. Facts

are stubborn things and we should look them in the face. Thus we premise our affirmance on the existence of fraud in fact, or actual fraud.

We will assume that the transfers ordered in lieu of alimony, constitute a lawful consideration and still declare the transfers to be fraudulent. In Phillips v. Meyers, 82 Ill 67, 69, it was said:

> "It is believed that the power of a husband to make a settlement of property or funds on his wife by the intervention of a trustee, has never been questioned, and this may be done by a marriage settlement before marriage, or by deed to a trustee afterwards. When the settlement or advancement is thus made, as between the parties, it has always been held binding, and can *only be questioned by existing creditors*. Such settlements and advances have always been favored by the courts. A husband, being bound for the support of his wife, may undoubtedly make provision therefor by settlement or otherwise, and this obligation, and the relation of the parties, have ever been held to constitute a sufficient consideration to support the transaction, *unless creditors* are thereby injured or defrauded. The wife is regarded as a meritorious object of the bounty of the husband. Provisions for her support are always upheld, unless wrong or *injury results to those holding legal obligations* against the husband. In such cases, the duty to support forms a sufficient consideration." (Emphasis ours.)

On what do we base actual fraud? We look to the sequence of events, and the events themselves, without resort to less explicit indicia—such as, obtaining the decree at a distance. The relationship between debtor and respondent, his act in depriving another of his life, his conviction and sentence, his continuing duty of support, created the type of circumstances that would not un-

naturally lead the debtor to think less of his tort-creditor and more of his family from whom he is not only physically barred, but by being imprisoned for a very long time is foreclosed from providing for them. Taking these factors into account, it is impossible to escape the conclusion that debtor and respondent, under a misguided notion as to the law, not the facts, embarked upon a course of conduct whereby the debtor endowed respondent with all his worldly goods so as to immunize them from diminution at the hands of a newly and wilfully created tort-creditor. The fact that the debtor, as well as respondent, chose section 18 of the Divorce Act for camouflage (§ 19, c 40, Ill Rev Stats 1965), cannot change the coloration. Certainly, the court in entering the divorce decree, for aught that it knew, could very well consider the dispositive provisions as perfectly proper and indeed equitable. What it obviously did not know, and could not know, was the debtor's obvious sufferance to defeat creditor, and respondent's knowledge thereof, if not, her actual participation. In coming to this conclusion, we are well aware that there must be proof of circumstances from which we can so infer and that the circumstances must be shown by clear and convincing evidence. But as we have said, the stark simple facts as narrated are clear and convincing and, in our opinion, the inferences inexorable.

Certainly, creditor fits the description of a "creditor" within the definition even before the time her action ripened into judgment. Regardless of when the action was brought, both debtor and respondent knew that for a determinative period—two years—someone could and most probably would commence proceedings, with every prospect of ultimate success in the maximal amount— as creditor was left not only a widow, but with four children to support. Armed with this knowledge of the shape of things certainly to come, it was not unnatural, as we have said, that they desired to devise some means

74

of holding what they had without regard for the rights of debtor's putative creditor. Apropos is Cook v. Tedrick, 338 Ill App 573, 88 NE2d 515. There, the debtor without provocation assaulted plaintiff "without a single mitigating circumstance." Debtor there, as here, "realized that he would have absolutely no defense to a civil action for damages based upon his wrongful conduct." With less subtlety, but with greater speed than here, he disposed of his property by sale. We quote,

> "It would appear to us that defendant, Tedrick, [debtor] proceeded with dispatch to defraud a tort creditor he had greviously [sic] injured. Under the evidence produced in this case it seems to us that grantees unquestionably had notice of the fraudulent intent of their grantor, and in any event, they were certainly possessed of such facts as would place a reasonably prudent person upon inquiry and thus lead him to discover the fraud. Knowledge of the purchaser may be established by the pendency of litigation (citing case). Even though the grantee pays a full consideration, yet if the grantor sells for the purpose of defeating his creditors, and the grantee has notice thereof, he will be regarded as a participator in the fraud (citing cases). A transaction of this character cannot have equitable approval."

■ While the systematic liquidation here was robed in a judgment, as the cases say, it is not enough to conceal the stark fact that whatever the debtor had prior to the murder, he had nothing at the time of judgment. That which he did have, respondent had received and in part used. Section 18 of the Divorce Act may permit transfers to a wife in lieu of alimony, if such transfers can be effected without fraud, but it was certainly never intended to be a vehicle to effect a fraudu-

lent end, or to transmute that which would otherwise be fraudulent into something lawful.

■ ■ We do not need direct evidence to say that the order appealed from is proper. Fraud necessarily has to be inferred from the circumstances. It would be singular indeed if there was direct evidence. But the overall circumstances speak for themselves as raising a permissible inference of specific intent to defraud creditor and that both the debtor and respondent possessed such intent. One further rule impinges on us that the trial court was not concerned with, the rule that we will not disturb an order unless it is manifestly against the weight of the evidence, whatever might have been our predispositions had we tried the matter. We cannot say that the order appealed from is not bottomed on sufficient evidence to support the order and we will therefore not disturb it.

The order appealed from is affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.