RON STOPKA *et al.*, Plaintiffs-Appellants, *v.* COMMERCIAL EMBROIDERY, INC., *et al.*, Defendants.—(HELENA LIUZZA, Respondent-Appellee.)

First District (3rd Division)    No. 79-2368

Opinion filed November 18, 1981.

Vincent J. Pascucci, of Chicago (Griffin, Fiedler & Pascucci, Ltd., of counsel), for appellants.

Wisch and Dyer, of Chicago (Dinah B. Dyer, of counsel), for appellee.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Ron Stopka, Sam Barris and Dick Dellinger, are judgment creditors of defendants, Commercial Embroidery, Inc. (CEI), and Matthew Liuzza, president of CEI. Respondent, Helena Liuzza, is Matthew's wife. Plaintiffs filed a petition for a turnover of assets against respondent, alleging that Matthew transferred his undivided one-half beneficial ownership of a land trust to respondent, and that this transfer was merely a sham to evade and defraud plaintiffs. The trial court denied plaintiffs' petition. We reverse and remand.

On August 6, 1976, Matthew signed a promissory note and security agreement as president of CEI. He also signed the note and agreement individually, guaranteeing payment. The note was in the amount of $135,000 and was payable to plaintiffs in 90 days. The note was not paid when it became due, and plaintiffs obtained a default judgment against defendants on January 6, 1977.

Meanwhile, on December 9, 1976, Matthew assigned his and respondent's beneficial interests in a land trust to plaintiffs for collateral purposes. The *res* of the trust was the marital home. It appears that Matthew forged respondent's signature on this assignment without her knowledge. The house was sold on February 1, 1977, and was purchased by plaintiffs for $50,000. Plaintiffs then filed a complaint in chancery to confirm this sale. Matthew and respondent were named as defendants in the chancery suit. When respondent learned of the sale, she informed one of the plaintiffs that her signature on the assignment was a forgery.

On March 16, 1977, an agreement was executed between CEI, Matthew, respondent and plaintiff Dellinger (on behalf of all plaintiffs). Pursuant to this agreement, Matthew and respondent were to obtain a $40,000 first mortgage loan on the property held in the land trust. They were to pay the proceeds to plaintiffs, and this amount was to be applied against the balance due on the default judgment. The agreement further provided that as long as CEI, Matthew and respondent were not in default of the agreement, no further action would be taken to enforce the default judgment. In addition, the chancery action would be dismissed, and the prior assignment of the beneficial interest in the land trust would be released.

On March 29, 1977, Matthew and respondent obtained the loan and endorsed the check for the proceeds to plaintiffs. The following notation was made on the check: "Pursuant to agreement entered into March 16, 1977." On the same day, plaintiffs reassigned their interest in the land trust to Matthew and respondent.

It appears that a further default by defendants occurred, and plaintiffs caused a citation to discover assets to issue against Matthew on July 16, 1977. On July 21, Matthew assigned his beneficial interest in the land trust to respondent. A citation to discover assets was issued against respondent on August 16. On September 20, plaintiffs filed their petition for a turnover order, alleging that Matthew's assignment constituted a fraud on his creditors.

In her response to plaintiffs' petition, respondent essentially alleged that she and Matthew agreed that he would assign his beneficial interest in the land trust to her in consideration of her obtaining the mortgage on the marital home. She further alleged that this agreement was made with plaintiffs' knowledge. In their reply, plaintiffs alleged that the actual consideration for respondent's obtaining the mortgage was set forth in the March 16 agreement whereby plaintiffs agreed to dismiss the chancery suit.

Discovery depositions were taken of Matthew and William G. Beck, the bank officer involved in making the loan to respondent and her husband. Beck stated in his deposition that the bank required the release of the prior assignment made to plaintiffs (the one involving the forgery) before any funds could be turned over to the Liuzzas. He also stated that respondent was quite upset and very concerned about the situation, and she insisted that control of the marital home be regained. Matthew stated in his deposition that he signed respondent's name to the December 9, 1976, assignment without respondent's permission and that respondent told him that she would not agree to mortgage their home unless she owned it.

The case was submitted to the trial court for determination without

the testimony of the parties or witnesses. The court dismissed plaintiffs' petition for a turnover order, and indicated that its ruling was based on the fact that the mortgage executed by respondent was in consideration of Matthew's conveyance of his one-half interest in the marital property to respondent.

Section 4 of "An Act to revise the law in relation to frauds and perjuries" (Ill. Rev. Stat. 1975, ch. 59, par. 4) provides that any conveyance or assignment of real or personal property made with the intent to disturb, delay, hinder or defraud creditors is void as against such creditors. This provision is qualified by section 5 (Ill. Rev. Stat. 1975, ch. 59, par. 5), which states that the title of a purchaser for valuable consideration shall not be affected unless it appears that the purchaser had notice of the fraudulent intent of his grantor. (*Wilkey v. Wax* (1967), 82 Ill. App. 2d 67, 70, 225 N.E.2d 813, 814.) There are two general classifications of fraudulent conveyances. "Fraud in law" cases involve situations where there is no consideration given for the transfer. In those cases, fraud is presumed without the showing of a particular fraudulent intent. In "fraud in fact" cases, consideration is given, and an actual intent to defraud creditors exists. *Tri-Star Cabinet & Top Co. v. Heatherwood Homes, Inc.* (1976), 41 Ill. App. 3d 11, 13-14, 354 N.E.2d 4, 6; *Wilkey*, 82 Ill. App. 2d 67, 70, 225 N.E.2d 813, 814.

■■■ In the present case, although the parties sought to draw inferences on the questions of intent and whether there was fraud in law or in fact, there was no trial. The parties did not testify or produce witnesses who could have been called to testify, and they did not produce sufficient affidavits or other documents from which reasonable inferences of intent could be drawn. Generally, resort to abbreviated proceedings such as those presented by this record is inappropriate where the parties are seeking to draw inferences on the question of intent. (*Cf. State National Bank v. Kewanee National Bank* (1973), 16 Ill. App. 3d 272, 274, 305 N.E.2d 732, 733.) Where, as in this case, the record is not in a condition for the reviewing court to decide the issues presented with justice to all the parties, a reviewing court has the power to remand the case for further proceedings. (*Inter-Insurance Exchange v. Employers Mutual Casualty Co.* (1975), 31 Ill. App. 3d 906, 909, 334 N.E.2d 913, 915; see Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5).) In *Kitzer v. Kitzer* (1971), 1 Ill. App. 3d 1016, 274 N.E.2d 610, the court was faced with a similar situation. The court, quoting from *American Smelting & Refining Co. v. Industrial Com.* (1933), 353 Ill. 324, 329, 187 N.E. 495, 497, stated and held:

> " 'Where a material question is in controversy upon a material issue and the record discloses that all the evidence on that issue has not been produced, this court has the power to reverse the judgment and remand the cause for the

taking of further evidence on the part of either or both of the parties, upon the issues.'

See also *Henry's Drive-In, Inc. v. Anderson* (1962), 37 Ill. App. 2d 113, 185 N.E.2d 103, at page 110; and *People v. McGrath* (1967), 85 Ill. App. 2d 388, 229 N.E.2d 14, at page 15.

The judgment of the trial court is reversed and set aside and the cause is remanded to the Circuit Court with directions to take such further evidence that the parties may choose to present." 1 Ill. App. 3d 1016, 1021, 274 N.E.2d 610, 614.

Here, we believe the same result should be reached. Accordingly, we reverse and remand the case for further proceedings consistent with what is stated herein.

Reversed and remanded.

McNAMARA and WHITE, JJ., concur.