CAPITOL INDEMNITY CORPORATION, Plaintiff-Appellant,

v.

J.H. KELLER, et al., Defendants-Appellees.

No. 82–2886.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1983.

Decided Aug. 16, 1983.

David D. Crane, Leritz & Reinert, P.C., St. Louis, Mo., for plaintiff-appellant.

Ronald J. Giacone, Law Office of Ronald J. Giacone, Benton, Ill., Harold B. Culley, Jr., West Frankfort, Ill., John Kenneth Peek, DuQuoin, Ill., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and WYATT, Senior District Judge.*

POSNER, Circuit Judge.

This appeal from a judgment for the defendants in a diversity suit requires us to interpret and apply two Illinois statutes in a setting of alleged fraud against a creditor. The plaintiff is Capitol Indemnity Corporation. The defendants are J.H. and Fred Keller and other members of the Keller family; a bank in West Frankfort, Illinois; and the Gipsons.

We shall simplify the facts to make them easier to follow. In 1971 Capitol sued J.H. Keller for indemnity on a construction bond that Capitol had been the surety on. Capitol filed a notice of *lis pendens* (litigation pending) in the county recorder's office, covering land that J.H. Keller and his father Fred had bought 20 months earlier for $12,500. Each had put up half the down payment of $4,000 in exchange for a 50 percent share of the property, which they owned as joint tenants, and the West Frankfort bank had loaned them the remaining $8,500 and taken back a mortgage.

In 1973, with Capitol's lawsuit pending and J.H. Keller going broke and defaulting on the mortgage, the bank threatened to foreclose. Fred asked the bank not to foreclose, because of the damage it would do his good name, and he paid the bank the interest and principal due from J.H. Shortly afterward, J.H. conveyed his share of the property to Fred, who later sold part of it to another Keller who in turn sold a part to the Gipsons.

Capitol settled its suit against J.H. Keller in 1975 with the entry of a consent judgment for $172,000, which was filed with the recorder of deeds. Enter, a few days later, a shadowy enterprise grandly styled the Imperial Finance Corporation. Imperial paid Capitol $5,000 for an assignment of Capitol's rights under the consent judgment. On the same day that the assignment was executed, J.H. Keller gave Capitol an affidavit in which he represented that he had no assets but added that if this representation was false Capitol could sue him for fraud. J.H.'s lawyer at the time was an officer of Imperial. Two years later Imperial released the judgment it had obtained against J.H. It appears from comments made in the briefs and at oral argument that Imperial no longer exists and

* Hon. Inzer B. Wyatt of the Southern District of New York, sitting by designation.

that its business records may have been destroyed.

Capitol brought the present suit in 1980 to set aside the alleged fraudulent conveyance of J.H. Keller's property interest to his father Fred and thence to the other individual defendants, to some of whom the West Frankfort bank had issued mortgages. Capitol contended that the conveyance had been a fraud against a creditor (itself) because it had been made without consideration at a time when Capitol's original suit against J.H. Keller was still pending, and alternatively that the present owners of the property had acquired J.H.'s interest with notice of Capitol's claim by virtue of the filing of the notice of *lis pendens.* The case was tried to the court on stipulated facts, the court gave judgment for the defendants, and this appeal followed.

■ We can deal quickly with the *lis pendens* issue. Ill.Rev.Stat.1981, ch. 110, ¶ 405, provides that "every . . . suit seeking equitable relief, affecting or involving real property shall, from the time of the filing [of notice with the local recorder of deeds] . . . be constructive notice to every person subsequently acquiring an interest in . . . the property affected thereby, and every such person . . . shall, for the purposes of this Act, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he were a party thereto." The suit that Capitol filed in 1971 affected real property because it sought among other things an injunction against J.H. Keller's transferring any property, and the suit was properly filed in the county recorder's office, as was the consent judgment by which the suit was concluded in 1975. Hence anyone who purchased any of the land mentioned in the suit was bound by the consent judgment. But that judgment did not refer to the land; it was a pure money judgment. So while the defendants were bound by it, it was not notice of any claim by Capitol to the real estate interest that J.H. Keller had conveyed and hence it did not establish or preserve any such claim. *St. Joseph Mfg. Co. v. Daggett,* 84 Ill. 556, 562 (1877); 8

Thompson on Real Property § 4308, at p. 339 (1963 ed.).

The fraudulent-conveyance statute provides: "Every gift, grant, conveyance . . . or transfer of . . . any estate, real or personal, . . . made with the intent to disturb, delay, hinder or defraud creditors or other persons . . . shall be void as against such creditors . . . and other persons." Ill.Rev. Stat.1981, ch. 59, ¶ 4. Although the defendants argue that J.H. Keller's conveyance of his real estate interest to his father was made to allay the father's concern with his own good name rather than to put his son's principal asset beyond the reach of the owner's creditors, the timing is suspicious. J.H. Keller was faced with the prospect of having a judgment entered against him in Capitol's suit that would exceed his net worth. Transferring his real estate to his father without receiving any consideration was a way of saving the property from the creditors; if he had received any consideration, Capitol might have been able to satisfy a part of its judgment against him out of it.

■ In any event, a transfer by a debtor without consideration is constructive fraud against a creditor, and that is all the statute requires. E.g., *Wilkey v. Wax,* 82 Ill.App.2d 67, 70, 225 N.E.2d 813, 814 (1967); *Tcherepnin v. Franz,* 457 F.Supp. 832, 836 (N.D.Ill.1978). Before the consent judgment was entered, Capitol was a creditor of J.H. Keller within the meaning of the statute by virtue of the original indemnification agreement on which it had sued in 1971, and after the consent judgment was entered Capitol was a judgment creditor. It could therefore have brought suit under the fraudulent-conveyance statute against J.H. and Fred and any other Kellers who were in the know (the West Frankfort bank was a bona fide lender and the Gipsons bona fide purchasers, and Capitol agrees that it has no rights against them under the fraudulent-conveyance statute), up until the assignment of the consent judgment to Imperial Finance Corporation. J.H. Keller's affidavit merely acknowledged what was anyway clear as a matter of law—that in attempting to enforce the consent judgment

it had just gotten, Capitol could use the fraudulent-conveyance statute to set aside any transfers that J.H. had made in an effort to hinder or thwart it.

██ But the assignment changed everything. When a creditor assigns his rights he can no longer bring an action under the fraudulent-conveyance statute; he no longer is a creditor. It is not a dryly literal reading of the statute that leads to this result; as a matter of fact, the statute speaks of "creditors ... or other persons." It is a practical reading. If the assignor can bring a fraudulent-conveyance action, it cuts down on the rights conveyed by the assignment. As a creditor of J.H. Keller to the tune of $172,000, Imperial would have been entitled to sue to set aside as fraudulent J.H.'s conveyance of his real estate interest to his father in 1973, and to satisfy a portion of Imperial's claim out of that interest. But this right would have been worth little if Capitol could bring the identical suit. Capitol's counsel suggested at oral argument that if this happened the two creditors could split the proceeds. But this would still mean that the assignee had not received a full assignment of Capitol's claims.

██ Capitol's argument that its claim for fraudulent conveyance was a merely personal claim unrelated to the consent judgment and therefore not conveyed with it is untenable. Any fraudulent-conveyance suit that Capitol could have brought would have been merely ancillary to its claim under the consent judgment, which was the source of its rights as a creditor after the judgment was entered. The ancillary claim was assigned along with the main claim.

██ This reasoning would be impeccable if it were clear that Imperial was a bona fide assignee. But the circumstances of the assignment create an almost irresistible inference that it was not. J.H. Keller's lawyer was an officer of Imperial. J.H.'s affidavit in which he assured Capitol that he had no assets and agreed that if he was lying Capitol could sue him for fraud was executed on the same day as the assign-

ment of the consent judgment to Imperial, and it strains belief that the lawyer was unaware of the affidavit. If so, his knowledge could be imputed to Imperial since he was an officer, and therefore Imperial took the assignment subject to an express reservation by Capitol of its right to sue J.H. Keller for fraud. It is no answer that the only kind of fraud suit Capitol could bring was a suit based on a misrepresentation by J.H. Keller of his asset situation when he executed the affidavit. If he had fraudulently conveyed assets prior to that date those assets were, in contemplation of law, still his; so J.H. did lie, and thereby did open himself up to just this suit. The assignment and subsequent release would not defeat Capitol's right to bring such a suit, since Imperial had notice of Capitol's reservation of that right. On this view, Capitol did not assign all of its creditor's rights and could maintain this suit under the fraudulent-conveyance statute.

Unfortunately for Capitol, this theory was not advanced in the district court and, indeed, is barely hinted at in Capitol's briefs in this court. Instead of developing a factual record concerning Imperial, Capitol has throughout this proceeding treated Imperial's knowledge of J.H. Keller's affidavit as irrelevant. Though darkly hinting that Imperial was a phony, Capitol has never attempted to depose Imperial's officers or, so far as appears, to obtain any information about the company and its relationship to J.H. Keller prior to the assignment. Its brief mentions that an officer of Imperial was J.H. Keller's lawyer at the time of his deposition but does not mention the much more pertinent fact that the officer was J.H.'s lawyer when J.H. signed the crucial affidavit.

██ This case thus raises acutely the question whether it is ever proper for an appellate court to reverse a judgment on a ground (other than lack of subject-matter jurisdiction) that the losing party failed to raise in the district court. In civil cases (other than habeas corpus and other nominally civil proceedings for challenging the legality of incarceration), the standard an-

swer is "no." See, e.g., *Richter v. Hoglund,* 132 F.2d 748, 753 (7th Cir.1943). But like almost all legal generalities this one has exceptions. One, which has no application here, comes into play when a serious and sensitive issue of federalism is raised; this seems to be the type of "equity" issue that the Supreme Court had in mind in *Schlesinger v. Councilman,* 420 U.S. 738, 743, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1975), in citing *Younger v. Harris,* 401 U.S. 37, 40, 91 S.Ct. 746, 748, 27 L.Ed.2d 669 (1971). Another, and more pertinent, is "plain error." See, e.g., *United States v. Tennessee & Coosa R.R.,* 176 U.S. 242, 256, 20 S.Ct. 370, 375, 44 L.Ed. 452 (1900), cited approvingly in *Duignan v. United States,* 274 U.S. 195, 200, 47 S.Ct. 566, 568, 71 L.Ed. 996 (1927), which in turn was cited approvingly in *Councilman,* 420 U.S. at 743, 95 S.Ct. at 1305–06. There is authority that the courts of appeals can correct plain errors not drawn to the attention of the district court. See, for example, the cases cited in *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 549 (7th Cir. 1982), on plain error in jury instructions. But any civil plain error doctrine is bounded by equitable considerations, see *id.,* which argue against invoking the doctrine here even if there was *plain* error, as we doubt. Capitol Indemnity is a corporation, and the subsidiary of another corporation. It has dragged seven individuals and a small bank through a federal litigation and appeal, and its case against the bank and several individuals (the bona fide purchasers) borders on the frivolous, being limited to the plainly inapplicable *lis pendens* statute. Capitol may have had tactical reasons for not pursuing what seems to us its most promising theory, or it may know facts that we do not know which show that the theory has a fatal flaw. It wants a new trial, possibly with the addition of a new defendant (Imperial); we do not think the defendants should be put to the expense of another trial. Whether Capitol may have an action for common law fraud against J.H. and Fred Keller, the apparently defunct Imperial, or the officer of Imperial who represent-

ed J.H., and if so whether any or all of the defendants might have a defense of res judicata or collateral estoppel, are questions we need not decide.

AFFIRMED.