FIRST SECURITY BANK OF GLENDALE HEIGHTS, Plaintiff-Appellant and Cross-Appellee, *v.* MADLYNE BAWOLL, Defendant-Appellee and Cross-Appellant—(William R. Bawoll *et al.*, Defendants-Appellees).

Second District   No. 83—93

Opinion filed December 27, 1983.

Rolewick and McKillip, of Wheaton, for appellant.

Lloyd E. Dyer, Jr., of Wheaton, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, First Security Bank of Glendale Heights, appeals from that part of the trial court's judgment which, after a bench trial, held for defendant, Madlyne Bawoll, and refused to set aside a conveyance of real property by defendant in trust for her children, despite plaintiff's allegation that the conveyance defrauded it as a creditor of defendant. Defendant cross-appeals from that part of the judgment which found her liable upon two notes to plaintiff and awarded plaintiff $15,097.52 plus costs.

Plaintiff raises the single issue of whether defendant's voluntary conveyance of her only asset into a land trust for the benefit of her children for no consideration, regardless of intent, constitutes a fraud on her creditors and should be voided. On cross-appeal, defendant contends that the trial court's judgment in the amount of $15,097.52 against her is against the manifest weight of the evidence in two respects: (1) the amount was erroneously calculated; (2) the trial court erred in finding that defendant was not under duress when she signed one of the two notes.

Plaintiff filed a complaint which alleged, *inter alia*, that defendant and her husband executed two notes on which they subsequently defaulted and that defendant then transferred real estate into a land trust for the benefit of her children which worked to defraud her creditors. Defendant, in her amended answer, neither admitted nor denied the indebtedness on the notes but raised the affirmative defense of duress as to the second of the two notes.

At trial, Deborah Sons, vice-president of plaintiff's loan department, identified two notes that defendant and her husband, William Bawoll, had executed. The first was an installment note, executed in 1978 for the purchase of a motor home, for $8,500 with an interest rate of 10.73% which had not been paid according to schedule. The motor home was later sold for $4,000, which was applied to the amount outstanding. Sons testified that as of January 20, 1981, $8,031.33 plus ac-

crued interest was due on that note. The second was a demand note, executed in March 1980 and due in May 1980, for $5,100 which had an unpaid balance of $4,966.21 as of January 1, 1981, with interest accruing at $2.72 per day. Sons stated that she had witnessed defendant sign her name on at least 10 occasions, and identified the signature on the two notes as that of defendant.

On cross-examination, Sons testified that although defendant signed the first note in her presence, she did not see defendant sign the second note. She admitted that the words "under duress" appeared beneath defendant's signature on the second note. Referring to the bank's records of the motor home account, Sons stated that the records did not reflect payments of $250 on March 15, 1980, and $200 on May 22, 1980.

Defendant, testifying as an adverse witness for the plaintiff, denied that she had signed the first note. Plaintiff's attorney read from defendant's deposition, wherein defendant had admitted that the signature on the first note was hers. She acknowledged that she had given that answer at the deposition. She further testified that when she signed the second note in June 1980, her husband and Stanley Walton, a bank officer, were present. She said "I wrote 'under duress' because Mr. Walton threatened to put Bill into jail because he always signed my signature." She testified that Walton said he could put her husband in jail for forgery. She complained that Walton had previously called her on the phone and had been "nasty" with her. She had wanted to talk to her attorney, but she testified that Walton told her he had already talked to her attorney and she had better sign the note. At the time she signed the second note, her husband had recently had a heart attack, she had been in the hospital, and she said she was very nervous. Defendant claimed to have transferred her real estate, a family residence, into a land trust for her two minor children after she found out that she had cancer and did not know that she owed the bank any money. She said that her children did not give her anything for the property and admitted that after the transfer she did not own anything.

Testifying on her own behalf, defendant stated that she had discussed transferring her property to her children with an attorney, Thomas O'Connor. Defendant said she told O'Connor that her husband was going out with someone else and she wanted to give her house to her children. As a result of that discussion, defendant's husband transferred his interest in the house to her in 1975. In 1978 or 1979, she talked to another lawyer, Philip Locke, and voiced the same concerns that she had discussed with O'Connor. She said that she was trying to

protect the interests of her son, who was a child from a previous marriage, and that Locke put the house in trust for the children in 1980.

Attorney Thomas F. O'Connor testified that defendant was concerned about protecting her first child, who was of another marriage. He advised her to have the house put in her name. Although they discussed putting the property into a land trust, he had explained that annual costs were involved and the matter was dropped. Defendant had wanted to put her son's name also on the deed, but O'Connor advised against it because it would be impractical since the boy was still a minor.

Attorney Philip F. Locke testified that defendant consulted him in 1979 because she wanted to protect her home from her husband's creditors. Locke said he suggested that the property be placed in a land trust. He completed the arrangements sometime in 1980. Defendant was the beneficiary as guardian on behalf of her two minor children. Locke said that defendant did not have any creditors that he knew of when the property was transferred into the land trust.

Defendant's husband, William Bawoll, testified that while he did not think defendant signed the first note, she did sign the second note after she got out of the hospital in June 1980. He signed the note in March 1980, and while it was due in May 1980, it was not paid at that time. He said that Walton knew that he, defendant's husband, had signed defendant's name to the first note and that Walton pressured defendant to sign the second note. He said Walton told defendant that her husband had signed her name and that was fraud or forgery. He stated that he had made cash payments on the motor home note and identified copies of receipts for those payments.

On cross-examination, William Bawoll admitted signing defendant's name on the first note. Plaintiff's attorney read from William Bawoll's deposition, wherein Bawoll identified the signature on the first note as being that of defendant. Bawoll acknowledged that he gave that answer at the deposition.

Although plaintiff filed its complaint against both defendant and her husband, as well as the Du Page Bank and Trust Company, as trustee of the land trust, the trial court dismissed William Bawoll as a party because of the discharge of his debts in bankruptcy proceedings. The trial court refused to set aside the conveyance, finding that defendant's health and marital problems provided sufficient justification for the transfer. Judgment on both notes was granted in favor of plaintiff, and defendant was found to owe $12,142.67 as principal and $2,954.85 as interest for a total of $15,097.52. While acknowledging that the testimony was contradictory, the trial court found that defend-

ant signed the first note and that she merely did not like signing the second note and that "such duress was not sufficient to make it unlawful."

Plaintiff's primary contention on appeal is that the trial court erred in considering defendant's intent when deciding whether the conveyance of her residence in trust for the benefit of her children was fraudulent. While Illinois statutory law operates to void conveyances "made with the intent to disturb, delay, hinder or defraud creditors ***" (Ill. Rev. Stat. 1979, ch. 59, par. 4), case law distinguishes between conveyances that are fraudulent in law and those fraudulent in fact. Fraud in law will be found where the conveyance is made for inadequate or no consideration. (*Wilkey v. Wax* (1967), 82 Ill. App. 2d 67, 70, 225 N.E.2d 813.) Fraud is presumed in these circumstances (*Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 62, 383 N.E.2d 631), and intent is immaterial. (*Birney v. Solomon* (1932), 348 Ill. 410, 415, 181 N.E. 318; *Till v. Till* (1967), 87 Ill. App. 2d 358, 361, 231 N.E.2d 641.) On the other hand, in fraud in fact cases, actual consideration has been given for the transfer and a specific intent to defraud must be proved. (*Wilkey v. Wax* (1967), 82 Ill. App. 2d 67, 70, 225 N.E.2d 813.) Here, defendant admitted that her children gave her nothing for the property thus calling for analysis under principles of fraud in law.

■ To prove fraud in law, (1) there must be a voluntary gift; (2) there must be then existing or contemplated indebtedness against the donor; and (3) it must appear the donor did not retain sufficient property to pay his indebtedness. (*Mills v. Susanka* (1946), 394 Ill. 439, 448, 68 N.E.2d 904.) The first requirement is satisfied here because where there is no consideration or grossly inadequate consideration, the transfer is deemed to be voluntary. (*Till v. Till* (1967), 87 Ill. App. 2d 358, 361, 231 N.E.2d 641.) As for the second requirement, the trust agreement transferring the property is dated December 12, 1980. The first note was executed in 1978, and the second note was signed by defendant in June 1980. The trial court found defendant to be liable on these notes, and therefore she was indebted to plaintiff prior to the creation of the land trust. As for the third requirement, defendant admitted that after the transfer, she did not own anything. Thus, insufficient property remains to pay her indebtedness.

The presumption of fraud can only be overcome by showing that after the transfer, the debtor retained ample assets to cover the debts (*Harting v. Jockers* (1891), 136 Ill. 627, 635, 27 N.E. 188; *Second National Bank v. Jones* (1941), 309 Ill. App. 358, 366, 367, 33 N.E.2d 732), or that adequate consideration was given for the transfer (*Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 62, 383 N.E.2d 631), thus

requiring that the case be analyzed under fraud-in-fact principles, where actual intent to defraud must be proved. (*Till v. Till* (1967), 87 Ill. App. 2d 358, 361, 231 N.E.2d 641.) Neither showing has been made here.

Instead, defendant attempts to shift the burden of proof by asserting that plaintiff must demonstrate that its rights as a creditor have been impaired. In this regard, defendant argues that plaintiff must show that the transferred property has value and thus impaired the rights of creditors.

■ Once the three elements to show fraud in law have been proved, unless rebutted, the presumption of fraud becomes conclusive. (*Tcherepnin v. Franz* (N.D. Ill. 1978), 457 F. Supp. 832, 840.) Here, the evidence is uncontradicted that after the transfer defendant did not own anything. Also, there is nothing in the record to warrant a conclusion that the residence does not have a value, and the burden to establish such an affirmative matter rests upon the donor.

■ However, defendant further argues that plaintiff cannot reach the property because it is subject to a $10,000 homestead exemption as provided under "An Act to exempt the homestead from forced sale ***" (Ill. Rev. Stat. 1979, ch. 52, par. 1), recodified as section 12—901 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 12—901). Defendant maintains that plaintiff did not prove that "creditors are hindered by the transfer of the property unless it also shows that exclusive of prior mortgage claims and the homestead interest the property has value." Defendant did not raise this issue at the trial level, and thus the record does not indicate the value of the property or any mortgage thereon. Generally, the homestead exemption may not be raised for the first time on review. (*Gravelot v. Skender* (1956), 9 Ill. 2d 15, 21, 135 N.E.2d 756.) Furthermore, an issue not raised in the trial court cannot be raised for the first time on review. (*Carillo v. Jam Productions, Ltd.* (1983), 97 Ill. 2d 371, 377, 454 N.E.2d 649.) While defendant may not avail herself of this contention on appeal, any homestead exemption that she may be entitled to can be asserted upon remand. Defendant has thus failed to present any valid argument that would enable us to leave intact the conveyance. The established rule in Illinois is that every man is bound to be just before he is generous. (*Emerson v. Bemis* (1873), 69 Ill. 537, 541.) If a voluntary conveyance from a parent to a child results in hindering or delaying creditors, it will be regarded as fraudulent in law, irrespective of the honesty of the grantor's motives. (*Reisch v. Bowie* (1937), 367 Ill. 126, 133, 10 N.E.2d 663; *Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 63, 383 N.E.2d 631.) The trial court erred in basing its decision whether to set aside the conveyance on defendant's intent. Since we conclude that the

transfer here constitutes a fraud in law, we need not further consider plaintiff's alternate argument that the conveyance also constitutes a fraud in fact.

■ On cross-appeal, defendant contends that the finding of the trial court that she was liable on the two notes was against the manifest weight of the evidence. Defendant first argues that the amount of the judgment is incorrect. She maintains that payments of $200 and $250 were not credited and that interest was double charged. While the trial court did not itemize the amounts of principal and interest due on each note or specifically explain the calculations underlying the final award, it is under no duty to do so. No special findings of fact are necessary to support the judgment or as a basis for review. (87 Ill. 2d R. 366(b)(3)(i). Every reasonable intendment not negatived by the record will be indulged in support of the judgment. (*Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 1022, 327 N.E.2d 346.) Here, the first note was for $8,500 principal at 10.73% interest for six years, while the second note was for $5,100 principal with a 20% annual interest rate. Both notes contained acceleration clauses and provisions for default charges. The only testimony on the calculations of the amount owed on the notes was that of Deborah Sons. The trial court's judgment for plaintiff is supported by the evidence presented, and we will not disturb it.

■ Defendant's second and final argument on cross-appeal is that the trial court erred in finding her liable on the second note. She argues that the evidence showed that she signed the note only because of a threat to imprison her husband, and thus her obligation on the note should be voided. She relies on *Corn Belt Lumber Co. v. Doty* (1918), 212 Ill. App. 521, wherein it was said that actual or threatened use or misuse of criminal process, legal or illegal, sufficient to overpower and overcome the will of the party threatened constitutes duress. (212 Ill. App. 521, 522.) That court, however, specifically held that the wife was not liable where her husband had been threatened with imprisonment "[o]n the theory that the verdict of the jury is right on the facts." (212 Ill. App. 521, 524.) Thus, if duress is found based on the evidence, the agreement will be voided.

Duress exists where one is induced by the wrongful act of another to make a contract under circumstances which deprives her of the exercise of her free will. (*Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 432-33, 369 N.E.2d 858.) Mere annoyance or vexation will not constitute duress, but there must be such compulsion affecting the mind as shows that the execution of the note is not the voluntary act of the maker. (*People ex rel. Drury v. Catholic Home Bureau* (1966), 34 Ill. 2d 84, 92-93, 213 N.E.2d 507.) The burden of proving such duress is on

the person asserting it. 34 Ill. 2d 84, 92, 213 N.E.2d 507.

Duress is a question of fact to be determined by the totality of the surrounding circumstances. (*Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 699, 368 N.E.2d 1010.) An appellate court takes a deferential approach to findings of fact made at the trial level (*Havens v. Miller* (1981), 102 Ill. App. 3d 558, 567, 429 N.E.2d 1292), and will not substitute its judgment unless the findings are against the manifest weight of the evidence. (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 235, 445 N.E.2d 418; see 87 Ill. 2d R. 366(b)(1)(ii).) For a judgment to be against the manifest weight of the evidence, it must appear that the conclusions opposite to those reached by the trier of fact are clearly evident. *J.R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 636, 443 N.E.2d 597.

Here, the trial court found that defendant did not sign under duress. It stated that the evidence merely showed that she did not like signing the note.

The trial court is in a far better position to determine the credibility of witnesses. (*In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 71, 440 N.E.2d 840.) While defendant's husband testified that Stanley Walton pressured defendant into signing the note by telling her that her husband had signed her name and that that was fraud or forgery, he did not testify that threats of imprisonment were made. The trial court could take into account obvious bias on the part of defendant's husband. Defendant did testify that Walton threatened to imprison her husband. However, because her testimony concerning her signature on the first note had been earlier impeached, the trial court could properly disbelieve her testimony about circumstances surrounding her signing of the second note. On these facts, it does not appear that conclusions opposite to those reached by the trial court are clearly evident, and we affirm the trial court's finding of defendant's liability on both notes.

For the foregoing reasons, we reverse that part of the judgment which upholds the conveyance and remand to the trial court with instructions to void the conveyance, determine if a homestead exemption exists, and grant such other relief as is necessary. In all other respects, the judgment is affirmed.

Affirmed in part and reversed in part and remanded with directions.

UNVERZAGT and HOPF, JJ., concur.