In re CASH CURRENCY EXCHANGE, INC., an Illinois corporation, et al., Debtors.

DELTA SERVICE COMPANY, INC., Plaintiff,

v.

PALATINE NATIONAL BANK, Defendant.

Bankruptcy Nos. 83 B 1933 to 83 B 1989.
Adv. No. 85 A 149.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 8, 1988.

Thomas M. Craig, Kamenear, Kadison & Anderson, Chicago, Ill., for plaintiff.

Robert Keith Larson, Riordan, Larson, Bruckert & Moore, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

After the plaintiff, Delta Service Company, Inc., had completed the presentation of

its evidence the defendant, Palatine National Bank, moved under Bankruptcy Rule 7041 [Fed.R.Civ.P. 41(b)] for dismissal of the complaint on the ground that upon the facts and the law Delta Service had shown no right to relief. The court will grant the motion and dismiss the complaint.

Delta Service seeks to avoid its transfer on January 21, 1983, of $89,773.83 to Palatine National under §§ 544 (count II) and 548 (count I) of the Bankruptcy Code [11 U.S.C. §§ 544 and 548] and hold the bank liable under Code § 550(a). (The court after the parties' opening statements dismissed count III because Delta Service did not wish to proceed on this count.)

Code § 544(b) allows a debtor to use the applicable state's law of fraudulent conveyance to set aside transfers that it made. Section 548(a) creates alternative, federal concepts of fraudulent conveyances. If a transfer were made within one year before the filing of debtor's petition for relief under the bankruptcy code, and the debtor made the transfer with actual intent to defraud, the debtor may avoid the transfer. 11 U.S.C. § 548(a)(1). Alternatively, if the debtor received less than a reasonably equivalent value in exchange for such transfer and was insolvent on the date that the transfer was made, the debtor may again avoid the transfer. 11 U.S.C. § 548(a)(2).

Code § 550(a) provides for initial transferee liability under subsection (1) and subsequent transferee liability under subsection (2). In addition to any defenses given under the sections providing for the concepts of avoiding transfers, Code § 550(b)(1) limits the liability of a subsequent transferee who takes for value, in good faith and without knowledge of the avoidability of the transfer.

On January 21, 1983, Michael P. Ryan, president and sole shareholder of Delta Service, submitted to Palatine National Delta Service's check no. 3360, dated January 20, 1983, for $89,773.83 payable to Palatine National, bearing the name Michael P. Ryan and drawn on Delta Service's account at Jefferson State Bank of Chicago, Illinois. On January 20 and 21, 1983, Delta

Service was not and had never been indebted to Palatine National. Ryan and Dwight C. Adams were, however, as co-makers of a collateral promissory note. This note was secured by their assignment of their beneficial interest in a land trust, of which Palatine National was trustee. Subsequent to the receipt of this check Palatine National released the assignment of beneficial interest.

At the trial, Dennis McConnell, manager of various currency exchanges and management companies that Ryan owned, testified that on or about January 19, 1983, Ryan directed McConnell to ascertain the balance due on the personal debt that Ryan and Adams owed Palatine National. McConnell made a telephone inquiry and learned that the balance due was $89,773.83. McConnell, following Ryan's further instructions, prepared check no. 3360 payable to Palatine National, which negotiated it.

Delta Service offered through McConnell's testimony and that of another witness evidence that currency exchange balances were kept as low as possible at Ryan's request in order to secrete funds from Travelers Express Company to which the currency exchanges owed 5.9 million dollars. To achieve these low balances in the currency exchange accounts McConnell caused funds to be transferred from the currency exchange accounts to management company accounts. Delta Service was a management company. Neither witness, however, testified that the funds of a particular currency exchange account were transferred into a "Delta Service" account or that "Delta Service" was a recipient of such funds. The court sustained Palatine National's objections to the admissibility of this testimony on the grounds that it was not relevant, or although relevant, its probative value was substantially outweighed by the danger of unfair prejudice or confusion of the issues (Fed.R.Evid. 403).

This court has looked to the Seventh Circuit's recent opinions in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988), and in *In the matter of Xonics Photochemical,*

*Inc.*, 841 F.2d 198 (7th Cir.1988), to resolve the issues of avoidability and liability and to review its determination of the admissibility of the proffered evidence.

■ From applying the principles enunciated in *Bonded Financial* the court concludes that Palatine National is an initial transferee under Code § 550(a)(1) and not a secondary transferee under Code § 550(a)(2) because Palatine National was the payee of the check and received the benefit of having the loan paid off. This distinction is important, for entities covered by Code § 550(a)(1) may not as has been noted use the value-and-good-faith defense provided by Code § 550(b)(1). Therefore, the court will be able to grant Palatine National's motion to dismiss only if Delta Service has failed to introduce evidence to show that this transfer of $89,773.83 could be avoided under Code § 544 or Code § 548.

■ In *Bonded Financial*, 838 F.2d at 895, the Court of Appeals questioned to what extent did "intent" matter under Code § 550(a)(1). This court is of the opinion that we must look to the avoiding concepts under Code §§ 544, 545, 547, 548, 549, 553(b), or 724(a) to determine the answer. If the section setting forth the avoiding concept requires that intent be proved, intent must be proved. Both Illinois fraudulent conveyance law as incorporated by Code § 544 and Code § 548(a)(1) require proof that this transfer of $89,-773.83 was made with intent to hinder, delay or defraud creditors in order to set it aside. Intent, therefore, does matter in these actions.

■ The Court of Appeals also raised the question in *Bonded Financial* of whose intent matters. Of course, it is that of Delta Service. Thus, Delta Service must show that it had creditors on January 21, 1983 and then that this transfer to the bank did hinder, delay or defraud these creditors. Delta Service has submitted no such evidence, but rather has suggested through the proffered testimony that Delta Service was a part of Ryan's scheme to defraud a certain creditor of the currency exchanges. Those generalizations of Delta Service's witnesses that "moneys were transferred from currency exchanges to management companies" do not show that Delta Service intended to hinder, delay or defraud its creditors.

■ Moreover, these generalizations cannot be admitted into evidence to show Ryan's scheme until Delta Service offers evidence as to how Delta Service fit into or was involved in Ryan's machinations. To receive the testimony at this time the court would have to speculate as to how Delta Service were involved. The proffered testimony does not rise to the level of circumstantial evidence from which the court may deduce that currency exchange moneys were deposited in Delta Service's account. Delta Service has failed to prove that it was a part of Ryan's scheme.

Delta Service has brought to the court's attention its memorandum and order of September 25, 1987, in *J.T.J.A. Corporation v. Roberts Protective Service, Inc.*, adversary no. 85 A 145 [available on WESTLAW, 1987 WL 46369]. The facts in the case at bar differ. There has been no showing that Palatine National had knowledge of Ryan's machinations or participated in his scheme. If there had been such a showing the evidence would be admissible. Also, if Palatine National had been a subsequent transferee under Code § 550(a)(2), the witnesses' testimony might be relevant under Code § 550(b)(1) to show the avoidability of the payment provided that Delta Service submitted proof that Palatine National possessed sufficient knowledge of Delta Service's business activities or of Ryan's machinations to have induced a reasonable person to investigate the source of the moneys used to pay the bank. Here, Delta Service offered no evidence to show that Palatine National had information sufficient to support an inference of knowledge to cause Palatine National to start an investigation on its own. *See, Bonded Financial, Part IV*, 838 F.2d beg. at 897.

■ As has been noted, Code § 548(a)(2) would permit Delta Service to recover if Delta Service had received less than a reasonably equivalent value in exchange for

the transfer of the $89,773.83 and if Delta Service were insolvent on January 21, 1983, the date of the transfer. There is no doubt that Delta Service received less than the reasonable equivalent value for the moneys were used to pay off the debt of Ryan and Adams. However, Delta Service submitted no evidence on the issue of insolvency. Therefore, it may not recover under Code § 548(a)(2). The court concludes that on the facts and the law Delta Service has shown no right to relief and that Palatine National's motion to dismiss is to be granted.

It is therefore ordered that the motion of Palatine National Bank, defendant, to dismiss the complaint of Delta Service Company, Inc., plaintiff, after plaintiff has completed presentation of its evidence, is granted. Judgment is entered in favor of the defendant and against the plaintiff. Complaint dismissed.