**In re CASH CURRENCY EXCHANGE, INC., et al., Debtor.**

**DELTA SERVICE COMPANY, INC.,**
**Plaintiff/Appellant,**

v.

**PALATINE NATIONAL BANK,**
**Defendant/Appellee.**

**Bankruptcy No. 83 B 1933–1989.**
**Adv. No. 85 A 0149.**
**No. 88 C 4442.**

United States District Court,
N.D. Illinois, E.D.

Nov. 23, 1988.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

The Delta Service Co., Inc., plaintiff-appellant, appeals the dismissal of its complaint against the Palatine National Bank, defendant-appellee, in the United States Bankruptcy Court. 85 BR 65. Delta sought to avoid its January 21, 1983 transfer of $89,773.83 to Palatine under §§ 544 and 548 of the Bankruptcy Code [11 U.S.C. §§ 544, 548], and hold the bank liable for the amount of the transfer under § 550(a) of the Code.[1] The trial court dismissed the

---

1. Under Code § 544, a debtor may use applicable state law of fraudulent conveyance to avoid a transfer:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law....

Under Code § 548, a debtor alternatively may use federal concepts of fraudulent conveyance to avoid a transfer:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such

complaint because Delta did not present evidence that would permit Delta to avoid the transfers under §§ 544 and 548.

The parties stipulated to the following facts: On January 21, 1983, Michael Ryan, the president and sole shareholder of Delta, a management company, transferred to Palatine $89,773.83 by check of Delta. The check, dated January 20, 1983, was made payable to Palatine, bearing the name of Michael Ryan, and drawn on Delta's account at Jefferson State Bank of Chicago, Illinois. On January 20 and 21, 1983, Delta was not indebted to Palatine. Michael Ryan and Dwight C. Adams, however, were indebted to Palatine as co-makers of a collateral promissory note secured by the individual's beneficial interest in a land trust, of which Palatine was trustee. Palatine released its collateral assignment of beneficial interest subsequent to the receipt drawn on Delta's account.

Delta sought to avoid the transfer to Palatine on the grounds that the transfer was made to hinder, delay, or defraud Delta's creditors. The pleadings and the record disclose that Michael Ryan was the owner of many Illinois and out-of-state currency exchanges and management companies, including Delta. The currency exchanges were primarily involved in the sale of money orders purchased from Travelers Express Co. In early January, 1983, the currency exchanges defaulted on payments due to Travelers. Witnesses testified at trial that Ryan ordered currency exchange checking account balances to be kept as low as possible by making intra-corporate transfers from currency exchange to non-currency exchange accounts. Some of

these transferred funds were then withdrawn for Ryan's personal use.

Delta attempted to establish at trial that the Delta–Palatine transfer was made with the actual intent of defrauding Delta's creditors, which would make the transfer avoidable under §§ 544 and 548, by circumstantial evidence indicating that the transfer was part of Ryan's scheme of defrauding the currency exchanges' creditors. At the trial, Dennis McConnell, manager of Ryan's various currency exchanges and management companies, testified that currency exchange balances were kept as low as possible to secrete funds from Travelers. McConnell further testified that Ryan directed McConnell to ascertain the balance due on the debt Ryan and Adams owed Palatine. McConnell, after learning the balance due was $89,773.83, and following Ryan's further instructions, prepared the Delta check payable to Palatine.

The trial court dismissed Delta's complaint because the generalized testimony of its witnesses that funds were transferred from currency exchanges to management companies did not show that Delta intended to hinder, delay, or defraud its creditors.

> The proffered testimony does not rise to the level of circumstantial evidence from which the court may deduce that currency exchange moneys were deposited in Delta Service's account. Delta Service has failed to prove that it was a part of Ryan's scheme. (Trial court opinion, at 7).

We affirm the decision.

■ Appellant argues that the trial court erred in striking the testimony of McConnell as to the source of funds in the Delta accounts.[2] The court sustained objections

---

transfer was made or such obligation was incurred, indebted....

Code § 550 provides for the recovery of an avoided transfer from initial or subsequent transferees. Section 550(b) prevents recovery from subsequent transferees that took for value, in good faith, and without knowledge of the voidability of the transfer.

**2.** Q Where did those funds come from?
A ... there was a change in the procedure whereby the money order sales that would have stayed in the Currency Exchange account was then changed where those funds were being transferred to management accounts.

So, in effect, Delta Service Company and other management accounts received monies from checks drawn on Currency Exchange accounts which represented money order sales. (Trial Transcript p. 68)
Q Can you recall, as you sit here, the source of [Delta's] funds?
A Specifically, what accounts, I can't, such as the name of the Currency but in—they were Currency Exchange monies from various Currency Exchange accounts.... (Trial Transcript p. 72)

to the testimony on two alternative grounds: the evidence was either irrelevant because the plaintiff laid no foundation linking Ryan's scheme to the Delta–Palatine transfer, or although relevant to the question of intent, the evidence was excludable under Fed.R.Evid. 403 because its probative value was outweighed by the danger of unfair prejudice and confusion of the issues. Plaintiff's counsel made an offer of proof, but nevertheless the trial court sustained the objections because no specific evidence of transfers from currency exchanges to Delta's account was forthcoming.

Absent a clear showing of an abuse of discretion, a trial court's discretion as to evidentiary rulings will not be disturbed on appeal. *Allen v. County of Montgomery, Ala.*, 788 F.2d 1485, 1488 (11th Cir.1986). "A trial judge has broad discretion in administering Rule 403 of the Federal Rules of Evidence, which authorizes him to exclude relevant testimony if its probative significance is outweighed by its prejudicial, confusing, or cumulative effect." *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1559 (7th Cir.1987). The trial court struck the vague testimony because of its prejudicial effect in coloring the Delta–Palatine transaction without the proper foundation evidence needed to identify the source of Delta's funds.

■ Appellant argues that relevant evidence cannot be excluded under Fed.R. Evid. 403 in the case of a bench trial, citing *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir.1981). While exclusion of the testimony under Rule 403 may be technical error, this court has considered the excluded testimony and finds any error was clearly harmless in this case. The plaintiff was able to introduce other evidence relating to the issue of intent, and thus suffered no harm from the exclusion. We hold that the trial court did not abuse its discretion in excluding McConnell's testimony.

■ Delta argues that the trial court erred in dismissing the complaint because Delta showed the requisite intent needed to avoid a transfer under § 548(a)(1). Section 548(a)(1) states that the debtor seeking to avoid a transfer must show "actual intent" to hinder, delay, or defraud its creditors. It is possible to establish actual intent with circumstantial evidence. *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir.1983).

The evidence proffered by Delta was not sufficient to show Delta had the actual intent of defrauding its creditors. Even considering McConnell's stricken testimony, no evidence was offered that established that funds transferred from Delta to Palatine were part of a scheme to defraud Delta's creditors. No evidence was submitted that Delta had creditors. Additionally, the inference to be drawn from the evidence is that Ryan intended to defraud the currency exchange creditors and not Delta's creditors.

■ Similarly, the trial court found that Delta failed to present evidence at trial that would allow for avoiding a fraudulent transfer under § 544, which makes applicable Illinois Rev.Stat. ch. 59 § 4.

> Every ... transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons ... shall be void as against such creditors, purchasers and other persons.

Appellant argues that the trial court's finding was erroneous because, under Illinois law, a fraud in law may be found where there is a voluntary transfer without consideration, and where the rights of creditors are impaired. *See Tcherepnin v. Franz*, 457 F.Supp 832, 836 (N.D.Ill.1978). Illinois courts divide fraudulent transfer cases into the categories of fraud in law and fraud in fact. "If there is no consideration for the transfer, it is 'fraud in law', and with consideration, its is 'fraud in fact'. In fraud in fact cases, there must be an actual fraud, a specific intent to defraud creditors. In fraud in law cases, fraud is presumed from the circumstances." *Wilkey v. Wax*, 82 Ill.App.2d 67, 225 N.E.2d 813, 814 (1967). Appellant argues that Delta received no consideration for discharging Ryan and Adam's debt. We re-

ject this argument because a "benefit to a third party is clearly sufficient to support a simple contract in Illinois." *In re Reliable Mfg. Corp.*, 703 F.2d 996, 1000 (7th Cir. 1983); *Lauer v. Blustein*, 1 Ill.App.3d 519, 274 N.E.2d 868, 870 (1971). Therefore, to avoid the transfer under § 544 the trial court must find fraud in fact, which is the same analysis applied under § 548(a)(1).

For the foregoing reasons, we affirm the trial court's dismissal of Delta's complaint. We do not need to review the trial court's finding that Palatine was an initial transferee under § 550.[3] The evidence presented does not allow Delta to avoid the transfer to Palatine under 11 U.S.C. §§ 544 or 548.

AFFIRMED.

---

**3.** The trial court found that Palatine was an initial transferee under § 550(a)(1) because it was payee of the Delta check. However, to the extent that plaintiff's theory at trial was that Ryan's scheme was to move funds from currency exchange accounts to management accounts to defraud Travelers, the evidence suggests that Palatine was a subsequent transferee under § 550(a)(2), and thus possibly shielded from liability by § 550(b)(1). *See Bonded Financial Services v. European Amer. Bank,* 838 F.2d 890, 896 (7th Cir.1988).